Melanie Sloan
D.C. Bar No. 454584
Anne L. Weismann
D.C. Bar No. 298190
Citizens for Responsibility
and Ethics in Washington
11 Dupont Circle, N.W.
2nd Floor
Washington, D.C.  20036
202-588-5565

Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON 11 Dupont Circle, N.W. Washington, D.C.  20036 | : : : : |
| Plaintiff, | : : |
| v. | : Civil Action No. 1:05CV01127(CKK) : |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES Independence Avenue, S.W. Washington, D.C.  20201 | : : : : : |
| Defendant. | : : |

---

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS
### <u>NOT IN GENUINE DISPUTE</u>

Pursuant to Fed. R. Civ. P. 56, LCvR7(h), and LCvR56.1, Plaintiff Citizens for

Responsibility and Ethics in Washington ("CREW") makes the following statement of material

facts not in genuine dispute:

1.  On January 11, 2005, Plaintiff sent a request under the Freedom of Information Act

("FOIA") to Defendant U.S. Department of Health and Human Services ("HHS") asking HHS to produce records of any contacts between the agency and any external public affairs firms, including but not limited to Ketchum and Fleishman Hillard. See Exhibit F to Amended Complaint. Plaintiff also requested records of any contracts that HHS may have entered into with any public affairs firms, as well as records of any contacts between any HHS employee and the employees of any public affairs firm with which HHS had a contractual relationship. Id.

2. In its FOIA request of January 11, 2005, CREW also requested a waiver of fees associated with the processing of its request. CREW explained that the records it seeks "are likely to contribute to the public's understanding of the Department of Health and Human Service's efforts to shape public opinion. Exhibit F to Amended Complaint. CREW further explained that it is a non-profit corporation that uses a combination of research, litigation and advocacy to advance its mission of protecting citizens' right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW also stated that it would analyze all information responsive to its request and "likely share its analysis with the public, either through memorandums or reports." Id.

3. Preceding CREW's FOIA request were widespread reports in the media that HHS and other agencies had violated the prohibition on publicity and propaganda by hiring public relations firms to produce covert propaganda. For example, in May 2004, the Government Accountability Office ("GAO") found that video news releases created by Ketchum in support of the newly enacted Medicare law and distributed by Defendant HHS constituted illegal covert propaganda, because the releases failed to reveal the source of the information. U.S. Government Accountability Office, Department of Health and Human Services for Medicare and

Medicaid Services – Video News Releases, GAO/B-3020710 (May 19, 2004).

4.  In addition, syndicated columnist Maggie Gallagher, who frequently wrote pieces supporting the Bush administration's $300 million initiative encouraging marriage, received a $21,500 contract with HHS.  See Howard Kurtz, Writer Backing Bush Plan Had Gotten Federal Contract, *The Washington Post*, January 26, 2005 (Exhibit C to Amended Complaint).

5.  Once that contract became public, HHS disclosed that it had also paid conservative columnist Mike McManus $10,000 to assist in promoting Bush administration policy and the President's marriage initiatives.  See Siobhan McDonough, Another Columnist Was Paid to Help Bush Administration Agency, *San Francisco Chronicle*, January 29, 2005 (Exhibit D to Amended Complaint).

6.  In light of the questions raised about the use of taxpayer dollars to fund public relations campaigns, the minority staff of the House Committee on Government Reform prepared a report on the Bush administration's public relations spending.  According to that report, in the four-year period from 2001 through 2004, the federal government spent over $250 million on 286 contracts with major public relations agencies.  U.S. House of Representatives Committee on Government Reform – Minority Staff, Special Investigations Division, Federal Public Relations Spending, p. 4 (Jan. 2005) (Exhibit E to Amended Complaint).  The majority of this spending went to four large firms: Ketchum Communications received $97 million in contracts, The Matthews Media Group received $51.6 million in contracts, Fleishman Hillard received $41.1 million, and Porter Novelli received $33 million in contracts.  Id. at 6.

7.  The overall issue of the government's role in creating covert propaganda continues to be of interest.  For example, on July 18, 2005, *The Washington Post* published a one-page article about

contracts that the Environmental Protection Agency had with the Weather Channel to produce and broadcast videos that advanced "the Bush administration's efforts to inform the public about climate change." Christopher Lee, EPA Paid Weather Channel for Videos, *The Washington Post*, July 18, 2005 (Exhibit 1 to Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment). That same article quoted Melanie Sloan, Executive Director of CREW, and noted CREW's role in addressing publicly "the administration's public relations practices." Id.

8. Nearly five months after filing its FOIA request, when CREW had received neither a response from HHS nor a time-frame within which HHS would respond, CREW filed this action on June 7, 2005.

9. By letter dated June 30, 2005, HHS advised CREW that its request for a fee waiver had been denied. Exhibit G to Amended Complaint.

10. On July 6, 2005, CREW filed an administrative appeal of HHS' initial fee determination. Exhibit H to Amended Complaint. In its appeal, CREW argued that it satisfies fully the requirements for a fee waiver because the subject of its FOIA request concerns the operations of the federal government and the disclosure will likely contribute to a better understanding of HHS's efforts to shape public opinion. CREW explained further why HHS's initial assessment that CREW was "unlikely to unearth fresh or new issue" was incorrect in all respects. And CREW also demonstrated that it has a "regular practice of" and "mechanism for dissemination of information to the public." Id.

11. Notwithstanding this showing, by letter dated July 14, 2005, HHS advised CREW that HHS had made a final decision to uphold the agency's denial of CREW's request for a waiver of fees under the FOIA. Exhibit I to Amended Complaint. HHS found that CREW had not demonstrated that disclosure of the requested documents is in the public interest because it is likely to contribute

significantly to public understanding of the operations and activities of the Government.  HHS did not

find that CREW was a commercial requester, and evaluated CREW's request for a fee waiver solely

under the "public interest" prong of the fee waiver requirements.  Id.

12.  On July 20, 2005, CREW filed a motion to amend its complaint together with the

amended complaint to add facts and counts dealing with HHS's denial of CREW's request for a fee

waiver.

Respectfully submitted,


_____/s/_____
Melanie Sloan
(D.C. Bar No. 434584)
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and
  Ethics in Washington
11 Dupont Circle, N.W.
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff


Dated: August 1, 2005