UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RONNIE VAN FRIPP, Plaintiff, | : | |
| v. | : | Civil Action No.: 97-159 (RMU) |
| GREGORY PARKS, *et al.*, Defendants. | : | Document No.: 32-1 |

FILED
MAR 1 5 2000
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION TO REINSTATE**

## I. INTRODUCTION

This matter comes before the court upon the plaintiff's motion to reinstate and the defendants' opposition thereto. Ronnie Van Fripp ("the plaintiff") argues that Gregory Parks, Warden of the Federal Correctional Complex-Medium Facility at Coleman, Florida ("FCC-Coleman"), and other agents of the Bureau of Prisons ("the BOP") (collectively, "the defendants") wrongfully denied his request for a fee waiver to cover the cost of reproducing 1200 pages of information contained in the Inmate Trust and Welfare Fund ("the ITWF"). The plaintiff asks this court to reinstate the above-captioned action so that he may challenge the BOP's final determination. The defendants counter that the plaintiff's request was denied because he failed to meet the requirements for a fee waiver provided under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(A)(iii), and 28 C.F.R. § 16.11(k) (the "FOIA fee waiver standards").[1] After reviewing the parties' submissions and this court's prior order

---

[1] Defendants state that the plaintiff failed to meet the requirements set forth at 28 C.F.R. 16.11(k), the regulation that establishes procedures to implement the standards provided at 5 U.S.C. § 552(a)(4)(A)(iii).

(N/

34

dismissing this case without prejudice, the court concludes that the plaintiff has failed to satisfy the FOIA fee waiver standards. Accordingly, the court will deny the plaintiff's motion.

## II. BACKGROUND

The procedural history of this action merits a brief summary. On July 11, 1996, the plaintiff, an inmate at FCC-Coleman, sent Warden Parks a FOIA-based request to reproduce 1200 pages of ITWF-related documents (the "ITWF documents"). (Compl. ¶ 7.) Warden Parks forwarded the plaintiff's request to the BOP. On October 11, 1996, the BOP replied by mail (the "Response") that by its estimation, processing the ITWF documents would take 34 hours and would cost $686.00. (Pl.'s Second Mot. to Reinstate, Ex. B.) The plaintiff, who had been transferred out of FCC-Coleman at a time contemporaneous with BOP's mailing, never received the Response.[2] (Pl.'s Second Mot. to Reinstate ¶ 3.)

In the absence of the Response, the plaintiff filed a *pro se* complaint for declaratory and injunctive relief on December 12, 1996, seeking, in pertinent part, to "[o]rder Defendant's [sic] to make the records requested available to Plaintiff at a reasonable cost." (Compl. ¶ 16.) By order dated February 25, 1998, this court dismissed the plaintiff's complaint without prejudice and directed the BOP to reopen the plaintiff's file and provide the plaintiff with a copy of the Response. The court stated that the plaintiff could refile his complaint in this court, "if appropriate," after administrative resolution of the issues.

---

2 The plaintiff had been sent to a medical facility in Springfield, Missouri and then transferred back to FCC-Coleman. During this time, the plaintiff's mail was "mixed-up" due to the change in address, and therefore, he did not receive the Response.

On April 7, 1998, the plaintiff received a copy of the Response. (Pl.'s First Mot. to Reinstate ¶ 3.) Two days later, the plaintiff responded by requesting a fee waiver to cover the cost of processing the ITWF documents based on his indigence. By November 11, 1998, the plaintiff had not received any correspondence from the BOP. Consequently, the plaintiff filed his first motion to reinstate in this court.

On March 3, 1999, this court ordered the BOP to show cause as to why the court should not reinstate the plaintiff's case. The BOP responded that it had not been served with the plaintiff's motion and moreover, that there was no record of the plaintiff's fee waiver request in its database. (Defs.' Resp. to Show Cause Order at 1; *see also* Edson Decl. ¶¶ 4-6.) Nonetheless, the BOP opined that the plaintiff's request would have been denied for failing to meet the FOIA fee waiver standards. This court viewed the BOP's opinion as tantamount to a denial of the plaintiff's fee waiver application, and held that such a denial neither constituted a final decision nor an exhaustion of the plaintiff's administrative remedies. Consequently, on June 17, 1999, this court denied without prejudice the plaintiff's motion to reinstate, in order to allow the BOP time to issue a final order.

On July 28, 1999, the BOP issued its final order. Katherine A. Day, Chief of the FOIA/Privacy Act ("PA") section of the BOP, issued a letter dated July 28, 1999, which denied the plaintiff's fee waiver request and outlined why the request did not meet the FOIA fee waiver standards (the "Denial Letter"). As a result of the Denial Letter, and in compliance with this court's previous order directing the plaintiff to file "if appropriate", the plaintiff filed the instant motion to reinstate on August 31, 1999 ("Pl.'s Second Mot. to Reinstate").

By his second motion to reinstate, the plaintiff asks the court to grant his request for a fee waiver for the ITWF documents on the grounds that the BOP is "misappropriating ITWF monies." (Pl.'s Second Mot. to Reinstate at 3.) Alternatively, the plaintiff asks the court to order the defendants to post the ITWF documents in the BOP prison libraries nationwide for inmate viewing. (Pl.'s Second Mot. to Reinstate at 5.)

## III. LEGAL STANDARD

The court construes the plaintiff's motion to reinstate as a motion for reconsideration brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)").[3] Rule 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of judgment.

*See* FED. R. CIV. P. 60(b). While the first five subsections of Rule 60(b) identify specific situations in which the court may modify final orders and judgments, the final subsection, Rule 60(b)(6), is known as a "catch-all" clause. *See Twelve John Does v. McQueen*, 117 F.3d 571, 578 (D.C. Cir. 1997); *Brannum v. Buriltanu*, No. 96-cv-302, 1999 WL 680007, *2 (D.D.C. July 28, 1999). A motion filed pursuant to Rule 60(b)(6) cannot allege any of the other grounds for relief enumerated under Rule 60(b). *See Baltia Air Lines, Inc. v Transaction Management, Inc.*,

---

[3] This is in keeping with similar holdings in this jurisdiction, the court construes this motion to reinstate under Rule 60(b). *See Ripalda v. American Operations Corp*, 673 A.2d 659 (D.C. 1996). In *Ripalda*, the plaintiff filed a Rule 41(b) motion which required her to show "good cause why the case should not be dismissed." The Superior Court construed the plaintiff's request as a Rule 60(b) motion, employed a "good cause" analysis and reviewed the plaintiff's motion on the merits.

98 F.3d 640, 642 (D.C. Cir. 1996) (explaining that "the courts have universally interpreted 'other' to mean other than the reasons specified in subsections 60(b)(1)-60(b)(5)") (internal quotations omitted). Rather, Rule 60(b)(6) provides that the court may alter a final order "upon such terms as are just" for "any other reason justifying relief from the operation of the judgment." *See Dyll v. Adams*, No. 91-2734, 1999 WL 447069, *2 (N.D. Tex. June 30, 1999) (in considering Rule 60(b)(6) motions, courts must be guided by the obligation to do substantial justice).

While the language of Rule 60(b)(6) may appear boundless, the Supreme Court has held that the rule applies only to "extraordinary" situations. *See Ackermann v. United States*, 340 U.S. 193, 202 (1950) (finding the facts did not merit Rule 60(b)(6) relief as they did not present an "extraordinary situation"). So has this Circuit cautioned that Rule 60(b)(6) relief should be granted only "sparingly" and in "extraordinary circumstances." *See Computer Professionals for Social Responsibility v. United States Secret Service*, 72 F.3d 897, 903 (D.C. Cir. 1996), *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

Informed by its obligation to do substantial justice, the court turns to consider the circumstances surrounding the plaintiff's motion to reinstate.

## IV. DISCUSSION

### A. Jurisdiction to Review the Merits

This court dismissed the plaintiff's complaint without prejudice and stated that "[a]fter a resolution of the fee issue, plaintiff may refile suit in this court, if appropriate." (*See* Order filed February 25, 1998.) Because the Chief of the FOIA/PA section rendered a final agency determination denying the plaintiff's fee waiver request, thereby resolving the fee waiver issue, the plaintiff has exhausted his administrative remedies. In accordance with the court's prior

order and Rule 60(b)(6), the court will determine whether there are extraordinary circumstances that warrant reinstatement of the plaintiff's complaint. If, for example, the plaintiff's arguments are meritorious, then this court will view reinstatement as necessary to effect substantial justice. If, however, the plaintiff's arguments lack merit, then the plaintiff will not be granted relief in the form of reinstatement of his dismissed action. The court, accordingly, turns to consider the merits of the plaintiff's request and the reasons underlying the BOP's decision to deny the plaintiff a fee waiver.

**B. Denial of Plaintiff's Request for Fee Waiver Eligibility Reviewed *De Novo***

Before 1986, the standard of review for FOIA fee waivers was the Administrative Procedure Act's familiar "arbitrary, capricious, [and] not in accordance with [the] law" standard. *See* 5 U.S.C. §§ 701-706; *see also Larson v. CIA*, 843 F.2d 1481, 1482 (D.C. Cir. 1988). In 1986, however, Congress amended the FOIA statute, thereby changing the standard of review to *de novo*. *See* Freedom of Information Act of 1986, Pub.L. No. 99-570, § 1804(b)(1), 100 Stat. 3207-50. As a result of the amendment, judicial review of a fee waiver request is both *de novo* and limited to consideration of the record before the agency. *See* 5 U.S.C. § 552(a)(4)(A)(vii); *see also Friends of the Coast Fork v United States Dep't of the Interior*, 110 F.3d 53, 54 (9th Cir. 1997).

**C. BOP's Reasons for Its Decision**

The BOP's stated reasons for denying the plaintiff's request are as follows. First, the BOP stated that the plaintiff could not rely on his indigence or *pro se* status to acquire a fee

waiver.[4] (*See* Denial Letter at 2.) Second, the BOP found that the inmate population did not constitute the public-at-large as defined under FOIA. (*See* Def's Opp'n to Pl.'s Mot. to Reinstate at 3.) Finally, the BOP found that the plaintiff did not demonstrate an ability to disseminate the requested information to the public. (*See* Denial Letter at 2.) In response to the plaintiff's demand that the documents be placed in BOP libraries nationwide, the BOP found that placing the documents in the library "failed to meet the burden of demonstrating with particularity that the information will be communicated to the public." (*See id.*) The court considers the BOP's determinations in view of the authorities.

**1. The Prison Population as the "Public" Within the Meaning of FOIA**

FOIA requires that documents be furnished free of charge or at a reduced rate, as long as "disclosure of the information is in the public interest." *See* 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure is in the public interest where it is "likely to contribute to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* This case is unusual in that the "public" being proffered by the plaintiff is the prison inmate population served by the BOP. (*See* Pl.'s Mot. to Reinstate at 3.) In the past, FOIA and the courts have defined "public" as the public-at-large, and have not defined the "public" to include smaller segments of the public-at-large, such as the prison population. *See Cox v. O'Brien*, No. 86-1639, slip op. at 2 (D.D.C. Dec. 16, 1996). FOIA was amended in 1986,

---

[4] In his first motion to reinstate, the plaintiff underscored his indigence by citing to the fact that he had proceeded *pro se*. (*See* Pl.'s First Mot. to Reinstate, Ex. B.) However, the plaintiff does not argue that he is indigent in his second motion to reinstate and accordingly, the court declines to reconsider the BOP's determination.

however, to delete any reference to the general public.[5] Moreover, the trend of authority views prisoners generally as the "public" within the meaning of FOIA. This court, for example, held in *Linn v. United States Department of Justice*, that the prison population can constitute the public-at-large within the meaning of FOIA. *See Linn v. United States Dep't of Justice*, 1995 WL 631847, *14 (D.D.C. Aug. 22, 1995). The *Linn* court observed, "nothing in the [FOIA] statute supports a distinction between the public at large and a segment of the public, or specifically between the non-incarcerated public and the incarcerated public." *Id.* (calling the BOP's assertion that the "prison population is only a narrow segment of the public and not the public at large . . . [a] crabbed interpretation.") (internal quotations omitted). Finding the *Linn* court's reasoning persuasive as applied to this case, the court will construe the term "public" to include the incarcerated public. The court considers the BOP's decision with the foregoing in mind.

**2. Plaintiff Fails to Satisfy FOIA's Two-Pronged Test for Fee Waiver Eligibility**

FOIA imposes a two-pronged test for evaluating a plaintiff's eligibility for a fee waiver, as follows: (1) whether the plaintiff's request is in the public interest, and (2) whether the plaintiff's commercial interest is greater than the public interest in the requested information. *See* 5 U.S.C. § 552(a)(4)(A)(iii). In all cases, the requester must show the public interest to be served by disclosure in order to demonstrate eligibility for a fee waiver. *See NTEU v. Griffen*, 811 F.2d 644, 647 (D.C. Cir. 1987) (requester seeking fee waiver bears burden of identifying

---

5 Congress amended the statute in 1986, *see* Freedom of Information Act of 1986, Pub.L. No. 99-570, § 1804(b)(1), 100 Stat. 3207-50, to delete the language of the fee waiver provision requiring that disclosure primarily benefit the "general" public; at present, the statute requires only that disclosure "contribute significantly to public understanding." *Cf.* 5 U.S.C. § 552(a)(4)(A) (1977) with 5 U.S.C. § 552(a)(4)(A).

public interest involved); *see also Fitzgibbon v. Agency for Intern. Development*, 724 F. Supp. 1048, 1050 (D.D.C. 1989) (requester has the burden of demonstrating, with reasonable specificity, the public interest to be served by the disclosure).

**a. Whether Plaintiff's Request Serves the Public Interest: A Four-Factor Inquiry**

According to FOIA fee waiver standards, reviewing agencies and courts should examine four factors when determining whether a request is in the public interest. Specifically, the BOP should examine whether the requested subject matter: (1) relates to the operations or activities of the government; (2) is meaningfully informative; (3) adds to the public's understanding; and (4) contributes significantly to the public's understanding of government. *See* 28 C.F.R. § 16.11(k)(2). For each factor, the plaintiff must demonstrate both the public interest to be served and how the plaintiff will disseminate the requested subject matter in so serving the public interest. *See NTEU*, 811 F.2d at 648.

The first factor for assessing whether the request is in the public interest requires the plaintiff to specifically identify how the requested information relates to the operations or activities of the government. *See* 5 U.S.C. § 552(a)(4)(A)(iii); *see also NTEU*, 811 F.2d at 647. "The subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." *See* 28 C.F.R. § 16.11(k)(2)(i). Here, the defendants concede that the ITWF documents could be of interest to "federal inmates." (*See* Denial Letter at 2.) The court, however, is not satisfied that the plaintiff has specifically identified government operations or activities or specifically identified how this voluminous request relates to the BOP. First, the plaintiff did not specify

whether the ITWF documents pertain to his own account or to those of inmates generally. Second, while the plaintiff charges that the ITWF documents may demonstrate an alleged misappropriation of ITWF monies, he fails to explain or describe the nature of the misappropriation. The ITWF document request is, rather, a fishing expedition that does not relate to defined operations or activities of the BOP. *See Gray v. USDA*, No. 91-1383, slip op. at 3 (D.D.C. Nov. 25, 1991) (explaining that a plaintiff is not entitled to a fee waiver where a minute amount of relevant information that may be found among masses of irrelevant information will enlighten the public understanding of the agency's operations); *AFGE v. United States Dep't of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986). The court, thus, concludes that the plaintiff fails to identify how the requested information relates to the BOP operations.

The second factor reviewing agencies and courts should consider is whether the disclosable portions of requested information are meaningfully informative in relation to the subject matter requested. *See* 28 C.F.R. § 16.11(k)(2)(ii). The information requested should not exceed the purpose for which it is to be used. *See AFGE*, 632 F. Supp. at 1278; *Gray*, No. 91-1383, slip op. at 3. As discussed, the plaintiff seeks the ITWF documents to support his allegation that the BOP is "misappropriating ITWF monies." (Pl.'s Second Mot. to Reinstate at 3.)

In the absence of independent evidence of misappropriation, the plaintiff's request is too ephemeral to compel the public to pay for his request. *See AFGE*, 632 F. Supp. at 1278 (union's allegations of malfeasance too ephemeral to warrant waiver of search fees without further evidence that informative material would be found). There is no evidence to suggest that the plaintiff will find information that incriminates the BOP in the disclosable portion of the ITWF

documents. *See id.* Moreover, the court will not ignore the fact that disparate privacy interests are at issue. In other words, the plaintiff's interest in exposing alleged misappropriation generally must be viewed against the backdrop of inmates whose privacy interests might be affected by the release of these documents. The court, thus, concludes that only the plaintiff's ITWF information is disclosable, and not that of other inmates. In view of the determination that only the plaintiff's ITWF information is disclosable, the plaintiff fails to demonstrate that the request for disclosure of the ITWF documents is meaningfully informative to whether the BOP is misappropriating his ITWF monies or ITWF funds generally. Thus, the plaintiff has failed to demonstrate the second factor pertaining to eligibility for a fee waiver.

The third factor asks the court to determine whether the disclosure would enhance the public's understanding, as opposed to merely benefitting the requestor personally. *See* 5 U. S.C. § 552(a)(4)(A)(iii)(1996). The plaintiff must demonstrate that the disclosure will "[c]ontribute significantly to public understanding," and that he is capable of disseminating the information to the public. *See Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (holding that inability to disseminate information alone is sufficient basis for denying fee waiver). It is the plaintiff's burden to disseminate the requested information to the public and not, merely, to make it available. *See Judicial Watch of Florida, Inc v. United States Dep't of Justice*, No. 97-2869, slip op. at 13 (D.D.C. July 14, 1998) (finding failure to establish intent and ability to convey information to public fatal to requester's fee waiver request); *see also Prows v. United States Dep't of Justice*, No. 87-1657, 1989 WL 39288, *6 (D.D.C. Apr.13, 1989) (upholding denial of fee waiver when requestor "is incarcerated, has no apparent connection with the news media, and has no apparent access to facilities or personnel that might enable him to disseminate the

information"). In determining whether the plaintiff is able to disseminate information, the court may consider the identity and qualifications of the requester, as well as his expertise and ability to disseminate the information to the public. *See Linn v. United States Dep't of Justice*, 1997 WL 577586, *6 (D.D.C. May 29, 1997) (finding plaintiff demonstrated he had the ability to convey the requested information, once furnished, to federal inmate lobbying organizations, which could widely disseminate it to the non-incarcerated public).

The plaintiff in this case is an inmate who lacks the ability to *physically* disseminate ITWF information to the general inmate population or to persons outside of the BOP. Moreover, the plaintiff has not demonstrated that he has other means to facilitate distribution. *See id* The plaintiff, instead, requests that this court order the BOP to place the ITWF documents in its prison libraries nationwide for inmate viewing. (*See* Pl.'s Second Mot. to Reinstate at 5.) This does not satisfy the plaintiff's burden. Obtaining placement in a library is, at best, a passive method of distribution that does not discharge the plaintiff's affirmative burden to disseminate information. *See Klamath Water Users Protective Ass'n v. United States Dep't of the Interior*, No. 96-3077, slip op. at 47 (D. Or. Oct.16, 1997) (finding placement in library insufficient dissemination to establish entitlement to fee waiver). Thus, the plaintiff does not satisfy the third criterion for a fee waiver.

The final factor for review in determining whether a fee waiver is in the public interest is whether the requested information enhances the existing level of understanding of government operations "to a significant extent." *See* 28 C.F.R. 16.11(k)(2)(iv). As discussed above (*see supra* Part C.2.), the plaintiff fails to demonstrate that the requested information will relate to

alleged misappropriation. The court further finds that the plaintiff fails to allege or demonstrate that the information will enhance the existing level of public understanding. Assuming for the moment that the ITWF documents do enhance an inmate's existing level of understanding, the court has previously observed that other inmates' individual privacy interests may be compromised by disclosure of the ITWF documents. Moreover, the plaintiff's request for such a large number of documents counsels the court against sanctioning what may amount to a proverbial quest for a needle in a haystack.

**b. Balancing Plaintiff's Commercial Interest Against the Public Interest**

Having considered the foregoing factors that relate to whether the plaintiff's request is in the public interest, the court turns to consider the final prong in the test for evaluating fee waiver eligibility. Under the FOIA fee waiver standards, the court must balance the plaintiff's commercial interest against the public's interest in the requested information. Nothing in the record gives rise to the inference that the plaintiff would benefit commercially from the disclosure of these documents. Nonetheless, in the final assessment the public, and not the plaintiff, must be the primary beneficiary of disclosure if the BOP, as surrogate for the public, is to foot the bill for a fee waiver. *See Crooker v. Bureau of Alcohol, Tobacco and Firearms of U.S. Dep't of Treasury*, 577 F. Supp. 1213, 1216 (D.D.C. 1983) (citing *Burris v. C.I.A.*, 524 F Supp. 448, 449 (M.D. Tenn. 1981)). Upon consideration of the balance of factors for assessing eligibility for a fee waiver, the court concludes that the plaintiff has failed to demonstrate that the disclosure of the ITWF documents is in the public interest. The plaintiff, therefore, fails to meet the FOIA fee waiver standards. It is, accordingly, neither appropriate nor in the interest of justice to reinstate his complaint. The plaintiff's motion is, consequently, denied.

D. **The Court Does Not Have Authority Under FOIA to Order the BOP to Place the ITWF Documents in the Prison Libraries**

As to the plaintiff's request in the alternative, that the BOP place the ITWF documents in prison libraries nationwide for inmate viewing, the court concludes that it is imprudent to grant such a request. First, FOIA bestows upon this court the authority to order disclosure by the BOP, if appropriate, but not the broad authority to order the BOP to place the requested documents in its prison law libraries. *See Linn*, 1997 WL 577586 at *14. Secondly, the court is tempered by the well-settled principle that district courts should not meddle in the BOP administrative affairs. *See Bell v. Wolfish*, 441 U.S. 520, 548 (1979) (noting that prison officials are to be afforded broad discretion by the federal courts in administering their internal affairs). For these reasons, the court concludes that the plaintiff's alternative grounds for relief do not compel reinstatement.

**CONCLUSION**

For the foregoing reasons, the court concludes that the plaintiff fails to demonstrate his eligibility for a fee waiver as prescribed by FOIA standards. Accordingly, the plaintiff's motion to reinstate his complaint is denied. An Order consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 15th day of March, 2000.

Ricardo M. Urbina
Honorable Ricardo M. Urbina
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONNIE VAN FRIPP, Plaintiff,

v.

GREGORY PARKS, *et al.*, Defendants.

Civil Action No.: 97-159 (RMU)

Document No.: 32-1

FILED
MAR 15 2000
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**O R D E R**

**DENYING PLAINTIFF'S MOTION TO REINSTATE**

For the reasons stated in a memorandum Opinion separately and contemporaneously executed this date herewith,

it is this 15th day of March, 2000,

**ORDERED** that the plaintiff's motion to reinstate his complaint be and hereby is **DENIED**.

**SO ORDERED.**

Ricardo M. Urbina
Honorable Ricardo M. Urbina
United States District Judge





35