# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT S. ORTLOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 98-2819 (TPJ) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | **FILED** |
| OF JUSTICE, *et al.* | ) | |
| | ) | MAR 2 2 2002 |
| Defendants. | ) | |
| | ) | NANCY MAYER-WHITTINGTON, CLERK |
| | | U.S. DISTRICT COURT |

## MEMORANDUM OPINION

Plaintiff sued the Department of Justice and the Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records relating to himself, the operation of the FBI crime laboratory, and the Office of the Inspector General of the Department of Justice.[1] The parties have filed cross motions for summary judgment. On review of the pleadings, the record of this case, and the applicable law, Defendants' motions will be granted and Plaintiff's motion will be denied.[2]

### Background of Plaintiff's Claim

The following summarizes the voluminous pleadings and other documents filed in this case.

In 1986, Plaintiff was convicted in the United States District Court for the Western District of Texas

---

[1] As Defendant notes, the only proper defendant under the FOIA is the United States Department of Justice. The FBI is not an independent agency under the FOIA but rather a component of the Department of Justice. 5 U.S.C. §§ 552(a)(4)(B), (f)(1).

[2] Plaintiff's cross-motion, filed early in the litigation, is based primarily on the absence of any response to his requests by components of the Department of Justice other than Executive Office for United States Attorneys ("EOUSA") and the Office of Information and Privacy ("OIP"). The other components have since processed Plaintiff's requests and filed separate motions for summary judgment, to which Plaintiff has responded. His own cross-motion is, therefore, to some extent moot.



of several offenses arising out of a mail bombing.[3]   Two packages had been sent by mail from Arizona to a serviceman at Fort Hood, Texas.  The serviceman was injured when one package, which contained nails, exploded as he opened it.  The second package was exploded by investigators.  At trial, evidence connecting Plaintiff with the bombing included his fingerprints identified by an FBI technician on brown paper from one of the packages, and bomb making equipment seized from his home. The victim was a man who had been having an affair with a woman who worked in Plaintiff's flower shop, with whom Plaintiff also was involved.  In addition to the sentence in the bombing case, Plaintiff is serving a consecutive sentence imposed by the United States District Court for the District of Arizona following his plea of guilty to a charge of possession of an unregistered firearm.

Plaintiff contends that FBI testimony and forensic evidence presented at his trial was false. Specifically, he alleges that an FBI expert, James Thomas Thurman, "had taken evidence from [the] second harmless package which came from [Plaintiff's business] and which was exploded at the crime scene as a precautionary measure," had discarded debris from the package with the bomb, and had substituted debris from the harmless package, thus "fraudulently" connecting Plaintiff  to the bomb. Plaintiff's Declaration in support of his Cross-Motion for Summary Judgment, ¶ 4.

In 1997, following publicity about problems in the FBI laboratory, Plaintiff filed FOIA requests with the FOIA/Privacy Act Section of the Department of Justice and the FBI for

> 1) A full and unabridged copy of all investigations and reports, together with any supplemental or ancillary documents which in any way pertain to and/or reference the Explosives Unit, Questioned Document Unit, Ballistics/Toolmark Unit and the Fingerprint Unit of the FBI Crime Laboratory since the year 1975.

---

[3]  These offenses were assault with intent to commit murder, use of a dangerous device in a crime of violence, mailing an injurious article, and obstruction of justice.

2

2) A full and unabridged copy of all employee files, performance reports, disciplinary reports, internal or DOJ investigations of, and civil or criminal actions against [five individuals] within the FBI Crime Laboratory;

3) A full and unabridged copy of all employee files, performance reports, disciplinary reports, internal or DOJ investigations of, and civil or criminal actions against [3 other FBI employees];

4) A full and unabridged copy of all employee files, performance reports, disciplinary reports, internal investigations of, and civil or Bivens actions against [two DOJ employees];

5) A full and unabridged copy of all employee files, performance reports, disciplinary reports, internal investigations of, and civil or Bivens actions against [a U.S. Army Judge Advocate General described as a Special Assistant U.S. Attorney];

6, 7) [All documents] which in any way pertain to and/or reference [Plaintiff's prosecution in the Western District of Texas and the District of Arizona] as such relate to FBI Crime Laboratory misconduct, FBI agent misconduct and Department of Justice misconduct;

8) A list of all conviction(s) and/or prosecution(s) of individual(s), past and present, that have or may have had questionable forensic work or misconduct by the FBI Crime Laboratory and/or FBI field or crime scene agents since the year 1976;

9) A list of all conviction(s) and/or prosecution(s) of individual(s), past and present, that have been or [are] under review based upon the recent report of the Inspector General regarding FBI Crime Laboratory and/or the work of Agent James Thomas Thurman.

In March 1998, Plaintiff wrote to the FBI requesting a "full and unabridged index of all reference material within the EXPLOSIVES UNIT and/or any FBI library that is used by any and all agents, experts and/or employees . . . ." He also sought a similar index of all reference material within the Questioned Document Unit of the FBI, and a "full and unabridged index of any and all

3

literature authored and/or co-authored by Special Agent James Thomas Thurman in both his official and unofficial capacity as an employee" of the FBI.

Plaintiff submitted a fourth request in September 1998, asking the Executive Office for United States Attorneys to send him copies of

> All Law and Practice Manuals and Handbooks concerning:
>     1) Arson related matters
>     2) Explosives related matters
>     3) Forensic and/or Expert Testimony Matters
>     4) Habeas Corpus Matters (Great Writ and 2255)
>
> All Guideline Manuals and Handbooks concerning
>     1) Records Maintainance [sic], Storage & Destruction
>     2) U.S. Attorneys Standards, Codes of Conduct & Ethics.

Plaintiff's fifth request, also made in September 1998, was to the FOIA/Privacy Act Section of the FBI for complete copies of all manuals and handbooks used within the Office of Professional Responsibility and the FBI Crime Laboratory regarding "Formation, function, mandate and regulations & rules of [the office/laboratory] as well as Standards, Codes of Conduct and Ethics." Plaintiff specifically requested of the FBI Crime Laboratory the documents "addressing forensic work and testimony by FBI agents, scientists, experts and technicians generally" and especially documents relating to crime scene investigation, arson and explosives, and identification of firearms and toolmarks, questioned documents, and latent prints.

By November 1998, when Plaintiff filed this case, the only document he had received in response to his several requests was a three page list of books relating to explosives and questioned documents, produced in response to his third request.

Ultimately many documents were released to Plaintiff, some with excisions based on various exemptions authorized by the FOIA. Other documents have been withheld pending receipt from Plaintiff of the required fees, his request for a fee waiver having been denied.

The following motions and responses have been filed:

- Motion for summary judgment on behalf of the Executive Office for United States Attorneys ("EOUSA"), the Criminal Division, and the Office of Information of Privacy ("OIP"). [Dkt. # 34-1].

- Motion for summary judgment on behalf of the FBI. [Dkt. # 35-1].

- Plaintiff's response to the above motions and cross-motion for summary judgment. [Dkt. # 44-1].

- Defendant's opposition to Plaintiff's cross-motion and in further support of its motion for summary judgment, including additional declarations from the Office of Inspector General ("OIG") and EOUSA. [Dkt. # 54-1].

- Plaintiff's response to the opposition to his cross-motion. [Dkt. # 57].

- Supplemental Memorandum in support of motion for summary judgment on behalf of OIG and the Criminal Division [Dkt. # 85]

- Plaintiff's response to Supplemental Memorandum on behalf of OIG and the Criminal Division [Dkt. # 88]

- Motion for summary judgment on behalf of the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, the Office of Professional Responsibility, and the Civil Rights Division [Dkt. # 84].[4]

- Plaintiff's response to this motion [Dkt. # 89]

- Defendants' reply to Plaintiff's response [Dkt. # 94].

- Plaintiff's Supplement to his response to the motions for summary judgment [Dkt. # 92], Defendant's Response to the Supplement [Dkt. # 97], and Plaintiff's Reply [Dkt. # 98].

In his various oppositions and cross-motions Plaintiff objects to the denial of a fee waiver and to the delay in producing requested documents. He argues that the individuals identified in the investigations of the FBI Crime Laboratory have lost their expectation of privacy and therefore all documents generated in those investigations should be produced to him, without fee, in the public

---

[4] In September 2000, this case was stayed at Defendant's request pending further searches in these additional components of the Department of Justice. [Dkt. # 81].

interest.[5]  He also objects to application of some of the FOIA exemptions cited by some of the components of the Department of Justice.

GENERAL PRINCIPLES

The Freedom of Information Act gives this Court jurisdiction over an action "to enjoin [an] agency from withholding agency records and to order the production of agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). To be subject to production, a record must be (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA request. *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136,144-45 (1989).  The Freedom of Information Act does not require "agencies to retain all records, nor does it establish specified procedures designed to guide disposal determinations." *Green v. National Archives & Records Admin.*, 992 F. Supp. 811, 818 (E.D. Va. 1998).

Summary judgment should be entered for a moving party when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all "justifiable inferences" in his favor. *Id.* at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (1986)(quoting *First Nat'l Bank v. Cities Serv. Co.*,

---

[5]  Plaintiff identifies a 1997 report on laboratory misconduct prepared by the Office of the Inspector General, the Department of Justice Task Force Report on Ruby Ridge, and the Criminal Division Task Force report on the FBI Crime Laboratory. Memorandum in Support of Cross-Motion for Summary Judgment, at pp. 5-6.

391 U.S. 253, 288 (1968)); Fed. R. Civ. P. 56(e);   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). The non-moving party is "required to provide evidence that would permit a reasonable jury

to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

*Accord, Williams v. United States*, 932 F. Supp. 354, 355 (D.D.C. 1996), citing Local Rule 108(h),

now LCvR 7.1(h).

In a FOIA case, the Court may grant summary judgment solely on the basis of information

provided in a declaration, when the declaration describes "the documents and the justifications for

nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically

falls within the claimed exemption, and [is] not controverted by either contrary evidence in the

record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738

(D.C. Cir.1981). *Accord, Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415

U.S. 977 (1974). In reviewing the agency's submissions, the Court should construe the facts and

inferences in the light most favorable to the plaintiff. *Williams v. United States, supra*. The agency

must prove that "each document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Central*

*Intelligence Agency,* 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF THE EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,
THE CRIMINAL DIVISION, AND THE OFFICE OF INFORMATION AND PRIVACY[6]

A. The Executive Office for United States Attorneys

The motion of the Executive Office for United States Attorneys is supported by the

declaration of Suzanne Little, Assistant Director of the FOIA and Privacy Act staff of that office.

---

[6] Subsequent filings related to this motion added information about the responses to Plaintiff from the Office of the Inspector General and the Justice Management Division.

Little Decl. ¶ 1.[7]  This office responded to Plaintiff's request for records relating to his criminal cases in Texas and Arizona, certain Department of Justice manuals, and information regarding third parties.  Little Decl. ¶¶ 5, 6, 25-26.  Because Plaintiff did not provide written authorization from the third parties, his request for information regarding them was not processed.  Little Decl. ¶ 5; Davis Decl. ¶ 11 & Exhibit Defendant [Dkt. # 54].

With respect to Plaintiff's case in Texas, EOUSA initially released 288 pages in full and 63 pages with redactions based on several FOIA exemptions.  Little Decl. ¶¶ 7-11.  Certain documents were referred to other agencies for direct response to Plaintiff.  Little Decl. ¶ 11.  After the Criminal Division reviewed certain documents, a second release was made, some documents being released in full, some in part, and some withheld in full.  A further release of parts of these documents was made later.  Little Decl. ¶ 14 and Exhibit H.  Additional releases were made by the Postal Inspection Service, the Criminal Division, the Bureau of Prisons, and the Justice Management Division.  Little Decl. ¶ 12 and Exhibit G.  Some documents originally sent to the FBI were returned and withheld in full.  Little Decl. ¶ 15.

Although the United States Attorney's Office for the District of Arizona originally reported that its files relating to Plaintiff had been destroyed, a further search revealed that although the files had been scheduled for destruction, they had not yet been destroyed.  Little Decl. ¶¶ 16-21.  Of the responsive records, 118 pages were released in full, 64 pages were withheld in full, and 20 pages were released with redactions, EOUSA relying on certain FOIA exemptions.  Little Decl. ¶ 23 and Exhibit K.

---

[7] Little submitted a supplemental declaration [Dkt. # 48] regarding 32 pages that had originated with the Department of the Army.  The Director of the Army Crime Records Center released a portion of the 32 pages and withheld the balance pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  Plaintiff has not submitted any comment on this supplemental declaration.

Little states that all the documents responsive to Plaintiff's request for manuals (Little Decl. Ex. D) were released. Little Decl. ¶ 24 and Exhibit L.

The Little Declaration is accompanied by an appropriate *Vaughn* index[8] which describes the documents and portions of documents that were withheld and the exemptions relied on by EOUSA. Grand jury testimony was withheld based on Exemption (b)(3) in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure. This exemption applies to documents exempt from disclosure by any statute that requires such information to be withheld from the public, leaving no room for discretion, or establishes specific criteria for withholding or refers to specific types of material to be withheld. Rule 6(e), which establishes a broad rule of secrecy for grand jury proceedings, is such a rule. Little Decl. ¶¶ 27-28.

Other documents were withheld in reliance on Exemption (b)(5), which applies to memoranda and letters exchanged within an agency or with other agencies, documents that would not be available by law to a party in litigation with the agency. This includes documents covered by the attorney-client privilege, attorney work product, and the deliberative process privilege. Documents withheld in whole or in part based on this exemption include documents relating to trial strategy, recommendations for investigation, personal evaluations and analysis of the evidence, etc. They also include documents relating to inter-agency discussions on possible criminal actions against Plaintiff. Little Decl. ¶¶ 29-31.

Certain redactions were also made based on Exemption (b)(7)(C), which applies to information compiled for law enforcement purposes if release could reasonably be expected to constitute an unwarranted invasion of personal privacy. All the information in the files of the United States Attorneys' Offices was compiled for the purpose of prosecuting Plaintiff. Little states that

---

[8] *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

each piece of information was reviewed to determine the "nature and strength of the privacy interest of any individual" named in the records.  When information was withheld, it was based on the decision by EOUSA that the public interest in disclosure did not outweigh the privacy rights of the individual involved.  Little Decl. ¶ 33.   Information was withheld about individuals who provided information to the investigating agents and third parties who were investigated as associates of Plaintiff.  Disclosure of the identities of these individuals would result in an unwarranted invasion of their privacy and possible harassment.  The identities of special agents, government employees, and local law enforcement officers was also withheld because release might impede their effectiveness in future cases.   Little Decl. ¶¶ 34 - 36.

Exemption (b)(7)(D) was applied to withhold information obtained from confidential sources during the criminal investigation, disclosure of which would impede the investigator's ability to obtain information in the future and "likely" would result in reprisal to the particular informants in this case.  Little states that the documents withheld pursuant to this exemption are stamped with the notation that the particular police reports are not authorized for outside distribution, constituting evidence that each source spoke only on an understanding that the information would remain confidential.  *See Department of Justice v. Landano*, 508 U.S. 165 (1993).  Little Decl. ¶¶ 38-40.

The final exemption relied on was Exemption (b)(7)(F), which permits an agency to withhold documents if release could reasonably be expected to endanger the life or physical safety of the individual.  The name of one witness who was identified as being potentially subject to future harm was withheld because Plaintiff has been convicted of violent acts.  Little Decl. ¶¶ 42-43.

Little states that all withheld documents and portions were reviewed for segregability and that no "reasonably segregable, meaningful, non-exempt portions of documents have been withheld."  Little Decl. ¶¶ 28; *see Id.*, ¶¶ 32, 37, 41, 44, 46.

10

Plaintiff's opposition to the motion on behalf of EOUSA includes objections to the delay in processing his FOIA requests and allegations of bad faith based on his assumption that the Department of Justice is covering up FBI misconduct in his case.[9] Cutting through the hyperbole, the Court concludes that Plaintiff's objections are not well founded.

Plaintiff objects generally to the application of Exemption 3 in conjunction with Fed. R. Crim. P. 6(e) to withhold grand jury testimony (Little Decl. ¶ 28) and a two page grand jury indictment approval sheet, which "would disclose . . . the proposed grand jury witnesses and the scope of the Federal grand jury." Little *Vaughn* index, p. 9. Plaintiff argues that "his case is far from ordinary. It is of public interest because there has been perjury and misconduct and governmental overreaching made under oath before two (2) separate grand juries . . . ." Memorandum in Support of Plaintiff's Response, pp. 13 -14 [Dkt. # 44]. Any case in which there has been perjury and misconduct would necessarily be of public interest. Nevertheless, Plaintiff's unverified assertions do not are not sufficient to override the strong interest in grand jury confidentiality. *See, e.g., Fund for Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 866-70 (D.C. Cir. 1981); *Senate of Puerto Rico v. United States Department of Justice,* 823 F.2d 574, 582 (D.C. Cir. 1987).

Plaintiff next opposes the withholding of attorneys' work product, witness statements, FBI law enforcement techniques, and documents showing state and federal interaction. In support of this argument, he describes documents and testimony relating to whether an accelerant was found in the remains of the package(s) received by the victim. The relevance of this discussion is unclear, since Plaintiff apparently already has the documents on which it is based. *See* Memorandum in Support

---

[9] For example, Plaintiff asserts that he has been denied counsel and an evidentiary hearing on his motions to vacate sentence in order to cover up prosecutorial and judicial misconduct. Memorandum at 19 [Dkt. # 44].

of Plaintiff's Response to Defendants' Motions for Summary Judgment and Plaintiff's Cross-Motion, pp 14-19 [Dkt. # 44]. In any event, the *Vaughn* index supports application of the relevant exemptions to the documents listed.

Finally, Plaintiff objects that EOUSA responded inadequately to his request for copies of manuals and other material by sending him only a copy of portions of Chapter 9 of the United States Attorney's Manual.[10]   The search for documents responsive to this request and the releases are described in a Declaration from Teresa L. Davis, attorney on the FOIA/Privacy Act staff of EOUSA, Exhibit 3 to Defendant's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment. Davis Decl. ¶¶ 5-10 and Exhibits A - C. [Dkt. # 54].[11] Seven additional pages relevant to explosives were later located in the U.S. Attorneys Criminal Resource Manual and released. Plaintiff does not further challenge the extent of the search. The Court concludes that the search was adequate.

B.  The Criminal Division

The Criminal Division's motion is based on two declarations of Linda Joachim, Litigation Attorney for that division's FOIA/Privacy Act Unit, one submitted with Defendant's initial motion and the second submitted in connection with Defendant's Supplemental Memorandum in Support of Motion for Summary Judgment on behalf of the OIG and the Criminal Division.[12]

The initial motion discusses the response of the Criminal Division with respect to records

---

[10]  Plaintiff observes that the Department's "reading rooms" "are full of literature pertaining to [his] request." Memorandum, p. 22 n.6 [Dkt. # 44]. He therefore apparently has access to the information he seeks through the public reading rooms.

[11]  Davis states that Plaintiff was sent copies of the U.S. Attorney's Resource Manual Comprehensive Retention Schedule for record retention, the Table of Contents to Title 9 of the U.S. Attorneys Manual, and sections 9-1, 9-2, 9-4, 9-5, 9-13, 9-37, and 9-63 of that title.

[12]  The declaration submitted with the initial response is cited as First Joachim Decl.; that submitted with the Supplemental Memorandum is cited as Second Joachim Decl.

originating with that division that had been referred by other DOJ entities. The Criminal Division received four records from the FBI, one of which was referred back to that agency. Two of the Criminal Division documents were released in full and the third was withheld based on Exemption (b)(5). A two page document, attached to one of the released documents, was referred to EOUSA. First Joachim Decl. ¶¶ 4-5. EOUSA later referred two documents to the Criminal Division, several of which were duplicates of documents previously processed. First Joachim Decl. ¶¶ 6-7, 9. Another document ultimately was released in full. First Joachim Decl. ¶ 8. One document was referred to the Office of Information and Privacy. First Joachim Decl. ¶ 9.

The two documents that were withheld originally are memoranda analyzing how the Whitehurst allegations regarding the FBI laboratory would affect pending and anticipated litigation and the obligation of the government to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). These documents were withheld as attorney work product, which protects the attorney's thought processes, theory of the case, or litigation strategy. The documents were considered non-segregable. First Joachim Decl. ¶¶ 8-13. If the documents were revealed, Joachim asserts, the attorney's legal analysis and thought processes would be disclosed, thus inhibiting frank discussion among department attorneys in the future. First Joachim Decl. ¶¶ 14-15.

Plaintiff initially did not challenge the application of Exemption 5 by the Criminal Division but rather objected that the division had not independently searched for responsive records but had only processed records referred by other entities. Plaintiff's Response, p. 11.

After an independent search was made by the Criminal Division, 29 documents were released in full, 23 documents were withheld in full, and portions of 17 documents were released. Exemptions 5, 6, and 7(C) were cited as the basis for withholding all or parts of these documents. Later another document was released in full and part of another document was released. Second

Joachim Decl. ¶¶ 7 - 36, submitted with Defendants' Supplemental Memorandum [Dkt. # 85].[13] The Division relied on the attorney work product or deliberative process privilege, authorized by Exemption 5, to justify its withholding of all or portions of certain documents. Joachim describes the withheld materials as having been prepared for intra-office review in connection with pending or anticipated litigation stemming from the Whitehurst allegations. Second Joachim Decl. ¶ 13. Some of documents discuss the impact of *Brady* and/or *Giglio v. United States,* 405 U.S. 150 (1972), in general or on specific cases.

In her second declaration Joachim describes the documents in detail and explains why each document falls within either the attorney work product or the deliberative process privilege authorized by Exemption 5. Second Joachim Decl. ¶¶ 14-18. The references to specific cases in the withheld documents are to cases involving third parties unrelated to Plaintiff. Second Joachim Decl. ¶ 19. The division concluded that it was not appropriate to waive the relevant privileges, in order to foster the "candid internal analysis and discussion necessary for efficient and proper decision making in conjunction with" cases that might be affected by the revelations about the FBI Laboratory. Second Joachim Decl. ¶¶ 23-26. Moreover, the factual material in these documents could not be segregated without revealing the discussions leading to prosecutorial decisions. Second Joachim Decl. ¶ 27.

Still other portions of the documents were withheld in reliance on Exemptions 6 and 7(C). Exemption 6 protects from mandatory disclosure confidential personal information from "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

---

[13] The Division did not send Plaintiff copies of his own correspondence and court filings in his criminal case, or records that had been produced earlier. Certain documents that had originated with other entities had been referred to those entities for separate response. Second Joachim Decl. ¶ 9.

invasion of personal privacy." 5 U.S.C. § 552(b)(6). *See Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).[14] As described above, Exemption 7(C) applies to information gathered for law enforcement purposes, the disclosure of which could reasonably be conceived to be an unwarranted invasion of personal privacy. Joachim identifies the documents or portions of documents that were withheld based on these exemptions. Second Joachim Decl. ¶¶ 28-33. In concluding that the privacy interests of the third parties outweighed Plaintiff's interest in obtaining the withheld information, the Division considered whether disclosure would further the public's interest in understanding how the Defendant performs its statutory duties. Second Joachim Decl. ¶ 30, 35 - 36. With respect to those documents withheld in full, the Division concluded that no segregable material could be released.

Plaintiff objects that the exemptions "are being used as a shield to fight off any release of records pertaining to a national disgrace and egregious governmental misconduct." Response, at 8 [Dkt. # 88]. He argues that disclosure would reveal whether or not government employees "engaged in serious wrongdoing, not only during individual criminal cases but also during the OIG's investigation and the Criminal Division task force review . . . ." Response, p. 9. Plaintiff asserts that although Thurman was the only FBI expert criticized in the OIG's 1997 report who testified at Plaintiff's trial, documents released to Plaintiff by the Criminal Division in August 2000 revealed that four agents "highly criticized in the OIG's report worked his case . . . ." Response, pp. 11, 11-13. Apparently the discredited Thurman based part of his testimony against Plaintiff on the testimony of another expert whose work (not necessarily in Plaintiff's case) had been criticized by the OIG report.

---

[14] This Exemption is discussed in detail at pp. 24-25, 27-29, *infra*.

The Court has reviewed the materials submitted and concludes that the Defendant has adequately supported the application of the several exemptions by the Criminal Division.

## C. The Office of Information and Privacy

The motion of the Office of Information and Privacy is based on a declaration from Melanie Ann Pustay, Deputy Director of the Office. One of the pages referred by EOUSA to the Criminal Division was referred to the OIP. This document, which was released with minor excisions, is a letter from an individual to the Deputy Attorney General regarding Plaintiff's case and the FBI laboratory problems. The name of the writer and two other small portions that would identify the writer were deleted based on Exemption (b)(6), which permits agencies to withhold personal information that would constitute a clearly unwarranted invasion of personal privacy. Pustay asserts that the OIP balanced the privacy interest of the author against the public interest in knowing the identity of the person who had written to the government. The Office concluded that although there is a public interest in learning about the type of mail the Deputy Attorney General received regarding the FBI laboratory, the identity of the particular writer was not of public interest. Pustay Decl. ¶¶ 5 - 7. The letter with the withheld portions blacked out is attached to the declaration.

Plaintiff has not responded to this portion of the motion and presumably concedes that it is well founded. Therefore, and because the OIP was justified in withholding the identities of these correspondents,[15] the motion will be granted.

## D. The Office of the Inspector General

While this case was pending, the Office of the Inspector General located Plaintiff's request for information, conducted a thorough search, and provided Plaintiff with complete copies of the

---

[15] *See, e.g., Voinche v. FBI,* 940 F. Supp. 323, 329-30 (D.D.C.1996); *Ortiz v. HHS,* 874 F. Supp. 570, 573-75 (S.D.N.Y.), *aff'd on other ground,* 70 F.3d 729 (2d Cir. 1995).

761 pages responsive to his request, that is, the OIG's April 1997 report into the FBI Laboratory, with an appendix. [16]   Briscoe Decl. ¶¶ 4, 6, 7, 9-11.  Plaintiff complained that he already had this report, challenged the adequacy of the search, and contended that he sought the underlying investigative documents, rather than the report itself.  *Id.* at 9-10.  A further search was then made and  Plaintiff  was informed that 23,000 additional pages would be released if he paid the fee of $ 2,290.00.  The OIG denied  Plaintiff's request for a fee waiver on the ground that he had not demonstrated sufficiently that release to him would be in the public interest.  Second Briscoe Decl. ¶ 4, submitted with Defendants' Supplemental Memorandum [Dkt. # 85].

It appears that the FBI responded to an identical request "with the investigative record produced as a result of the Whitehurst Review and for the OIG."  Plaintiff's Response, at 10 n.7 [Dkt. # 57], citing Defendant's Motion for Summary Judgment on behalf of the FBI, at p. 3.   If Plaintiff refers to the documents that the FBI would produce if he pays the fee of $ 1,202.80, then the material is available to him from one component of the Department of Justice if he complies with the requirement that he pay the fee.  For reasons discussed in connection with  Plaintiff's request for a fee waiver by the FBI, *infra* p. 19-22, the Court concludes that the OIG was justified in denying  Plaintiff's request for a fee waiver.

## E.  The Justice Management Division

This entity of the Department of Justice (the "JMD") reviews all FOIA requests not addressed to a specific division, and forwards the requests to the entity most likely to have responsive records.  *See* 28 C.F.R. § 16.3.  Two of  Plaintiff's FOIA requests went to the JMD; the only components

---

[16]  The Briscoe Declaration was submitted with Defendant's opposition to  Plaintiff's cross-motion for summary judgment and in further support of its own motion for summary judgment [Dkt. # 54]. Defendant asserts that the request was "accidentally misfiled."  Memorandum, pp. 2-3. Plaintiff contends that this is evidence of purposeful concealment.

specifically identified were the FBI and the OIG, and accordingly the requests were sent to those divisions. JMD also sent the requests to EOUSA, which appeared likely to possess responsive records. Plaintiff was advised that his requests were being sent to those divisions and was sent a list of all the components of the Department so that he could specify any additional offices that might have relevant records. Clark Decl. ¶¶ 2-6.

Plaintiff has submitted no comments on or objections to the response of the Justice Management Division, and presumably concedes that it responded correctly to his requests.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### ON BEHALF OF THE FEDERAL BUREAU OF INVESTIGATION

This motion is supported by the declaration of Scott Hodes, Attorney in the Litigation Unit of the FOIA-Privacy Act Section of the FBI, and an extensive *Vaughn* index. The Hodes declaration describes the several requests made to the FBI and the responses of that agency. Hodes also describes the Central Records System, the General Indices which provide access to the computerized records system, and the procedures for entering names in the computerized records system. These indices are the only way of retrieving information from the FBI files. Hodes Decl. ¶¶ 5 - 9.

### Request 431523

Plaintiff's first request, number 431523, was for all records regarding himself. Of records in its own files and those referred by other agencies, the FBI ultimately released 790 pages in full, withheld 616 pages in part, and withheld 40 pages in full. Hodes Decl. ¶¶ 4, 10 - 11.

The FBI withheld 15 pages in full pursuant to exemptions (b)(7)(C) and (D) to protect interviews with two individuals whose identity would be revealed by the nature of the interview. Exemption (b)(7)(C) was cited to protect the privacy of individuals in connection with 25 pages, consisting of firearms transaction forms, a photo copy of a driver's license, a "rap sheet," and photographs of the victim after he opened the bomb package. Hodes Decl. ¶ 11.

The documents withheld in part are contained in the extensive *Vaughn* index, with the excised portions blacked out and the exemption relied on for each deletion noted at the side of the page. Hodes describes the basis for exercise of the exemptions relied on for the various deletions. He also states that the responsive records were reviewed to ensure that all non-exempt material that could be segregated has been released. Hodes Decl. ¶¶ 13, 27, 29, 31, 33, 36, 46. Because all of the material was contained in files relating to criminal investigations, all documents were exempt from production under the Privacy Act, 5 U.S.C. § 552a(j)(2). Several FOIA exemptions were invoked to justify deletion of certain material from the pages released in part. This redacted material included names or identifying information of FBI Special Agents and support personnel, other federal government employees, local law enforcement personnel, state government employees, and persons interviewed or mentioned during the investigation. The FBI concluded that release of this information would be an unwarranted invasion of the privacy of the individuals in question, not overcome by any public interest. Exemption (b)(7)(C). Exemption (b)(7)(D), relating to confidential sources, was also cited in this connection. Information rating the techniques used in the investigation was withheld based on Exemption (b)(7)(E). Hodes Decl. ¶¶ 12 - 41.

<u>Request 430950 and the fee waiver issue</u>

The second request, number 430950, was for material relating to the FBI Crime Laboratory. Some of this material was released to Plaintiff; the balance was withheld pending payment of $ 1,202.80, the agency having denied Plaintiff's request for a fee waiver. Hodes Decl. ¶¶ 4. In response to Plaintiff's vigorous argument that the withheld material is of great public interest, Defendant states that the material has already been provided to Dr. Frederic Whitehurst and the National Association of Criminal Defense Lawyers ("NACDL")and thus to the public. Plaintiff counters that this release did not make the material available to the general public but only to those

individuals who retain attorneys who are members of the NACDL. He contends that he would make the material available on his website, www.wrongfullyconvicted.org, which he asserts is under construction. Statement of Material Facts, pp. 15-16 & n.4 [Dkt. # 44]. Moreover, Plaintiff notes, the release to the NACDL and Whitehurst related only to one investigation of 24 cases and "a few" FBI experts. It did not contain the records relating to the Department of Justice Task Force on the FBI Laboratory. *Id.* at 16, n.5.

The FOIA authorizes agencies to charge reasonable fees for the processing of requests, including a reduced fee for non-commercial use by an educational or scientific institution or a representative of the news media. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Plaintiff relies on a provision that documents shall be furnished without charge or below this reduced fee

> if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii). A requester such as Plaintiff has the burden of demonstrating that disclosure would be in the public interest and not primarily in his commercial interest. *See, e.g., National Treasury Employees Union v. Griffin*, 811 F.2d 644 (D.C. Cir. 1987); *Larsen v. CIA*, 843 F.2d 1481 (D.C. Cir. 1988).

Plaintiff correctly states that information as to the operations of the FBI Laboratory is in the public interest within the meaning of the FOIA. It is not clear, however, that disclosure of this material to Plaintiff would further the purposes of the statute. Plaintiff's numerous submissions of press accounts of mistakes made by the various branches of the laboratory tend to undercut his argument that disclosure to him is necessary in the public interest. A fee waiver may be denied when the material requested has already been released and is in the public domain. *See, e.g., Carney v.*

*United States Dep't of Justice*, 19 F.3d 807, 814 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994); *Sloman v. United States Dep't of Justice,* 832 F. Supp. 63, 68   (S.D.N.Y. 1993).

As to whether the public interest would be served by a release that would benefit only Plaintiff in his challenge to his conviction (which quite obviously is the reason that he pursues this matter with such vigor), the cases are in conflict. *Compare McClain v. United States Dep't of Justice*, 13 F.3d 220, 220-21 (7th Cir. 1993)(waiver inappropriate when requester sought to serve private interest); *Nance v. United States Postal Serv.*, 1992 WL 23655, at *2 n.2 (D.D.C. Jan. 24, 1992)(waiver inappropriate when requester sought to challenge his own conviction), *with Johnson v. United States Dep't of Justice*, 758 F. Supp. 2, 5 (D.D.C. 1991)(referring to interim opinion that death row prisoner seeking possibly exculpatory information was entitled to waiver because potential "miscarriage of justice . . . is a matter of great public interest"); *Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851, 856 (D. Colo. 1994)(personal interest *plus* concurrent public interest entitled requester to fee waiver); *cf. Harper v. Department of Defense*, No. 93-35876, 1995 WL 392032, at *2 (9th Cir. July 3, 1995)(prisoner who did not limit request to potentially exculpatory material as to himself was not entitled to fee waiver).

A final and determinative consideration is whether Plaintiff has the ability to disseminate the information to the general public, or even to a limited segment of the public such as prisoners. The courts invariably find a litigant's inability to disseminate the requested material fatal to his request for a fee waiver. *E.g., Larson v. CIA*, *supra*, 843 F.2d at 1483 & n.5;   *Slater v. Executive Office for United States Attorneys,* 1999 U.S.Dist. LEXIS 8399, at *14 (D.D.C. May 21, 1999)(plaintiff has the burden of proving he has the capacity to disseminate the material). Plaintiff asserts that he has a website "under construction" but does not indicate how he would upload the

requested documents onto the website, which as of this date is still not functioning.[17]  *Cf. McClellan v. Ecological Seepage Situation v. Calucci*, 835 F.2d 1282, 1286 (9th Cir. 1987);  *S.A. Ludsin & Co. v. United States Small Business Admin.*, 1997 U.S. Dist. LEXIS 8617, at *16 (S.D.N.Y. June 19, 1997), *aff'd*, No. 97-7884 (3d Cir. Mar. 26, 1998)(requester's intention to make data available on computer network, without analysis, insufficient to meet public interest requirement.).  *Compare Carney, supra*, 19 F.3d at 814 ("whether requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject"); *Crooker v. Department of the Army*, 577 F. Supp. 1220, 1223 (D.D.C. 1984)(plaintiff planned book about his brother's involvement in criminal activity; waiver denied when request was of interest to "a small segment of the scientific community"), *with Linn v. United States Dep't of Justice*, No. 92-1406, 1995 WL 631847, at * 14 (D.D.C. Aug. 22, 1995)("public" can include prison population ). The Court concludes that Plaintiff has not demonstrated his ability to disseminate the information further, and that Defendant's denial of the requested fee waiver was justified. [18]

---

[17]  In a Second Declaration submitted with his Response to Defendants' Memorandum in Opposition to his cross-motion for summary judgment [Dkt. # 57],  Plaintiff asserts that "[w]ith the aid of a simple scanner or fax machine," these documents can be "easily downloaded into the web site." *Id.* ¶ 2.  Given  Plaintiff's current incarceration, it is unlikely that he would be able to obtain either the "simple scanner or fax machine" or the time necessary to post hundreds of thousands of pages on his web site.

[18]  In a November 2000, filing [Dkt. # 88], Plaintiff asserts that as of that date 153,000 pages had been released to the NACDL in *NACDL v. U.S. Department of Justice*, Civil Action No. 97-372 (D.D.C.).  This further release undercuts  Plaintiff's argument that he should be granted a fee waiver in the public interest.  It is even less likely that he could make this large quantity of information available to the general public, or even to other prisoners.

In a recent filing [Dkt. # 92], Plaintiff states that the FBI claims that approximately 272,112 pages of records regarding the laboratory investigation had been reviewed as of June 2000, in connection with a court order and settlement agreement in *Whitehurst v. FBI*, Civil Action 96-572.  Plaintiff argues that his request is not limited to the subjects involved in that case or that brought by the NACDL.   Plaintiff claims that he seeks records of other units of the laboratory, going back to

(continued...)

Request 434943

The third request, number 434943, was for an index of reference material in the Explosives and Questioned Documents Units specifically, and the Crime Laboratory generally. Plaintiff also sought an index of all literature authored or co-authored by Special Agent James Thomas Thurman. Three pages were determined to be responsive and were released. Hodes Decl. ¶ 45.

Hodes states that although indices to the FBI Laboratory Reference Library are computerized, the system is not designed to sort data by a particular unit or to produce an index of all 10,000 volumes in the library. A search for "James Thomas Thurman," revealed that no literature authored or co-authored by him is in the library. Hodes Decl. ¶¶ 4, 45.

The request for an index for material regarding explosives specifically asked for

> 1) A full and unabridged index of all reference material <u>within the EXPLOSIVES UNIT</u> and/or any FBI library . . . which index will include titles, authors, publishers, Library of Congress Numbers, and the subject matter for all books, manuals, journals, magazines, . . . and any and all other material used in examinations, training, teaching, writing and reporting by the Explosives Unit personel [sic].

The request for an index of "all reference material within the QUESTIONED DOCUMENT UNIT" was couched in the same terms. Complaint, Exhibit C; Hodes Decl. Exhibits J, K. Plaintiff contends that he sought an index by subject, not by section. Statement of Material Facts, p. 1 n.7 [Dkt. # 44]. Nevertheless, his requests were for indices of material within the specific units, indices that do not exist. An agency is required only to produce records that exist, not to create records for a requester. *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975); *Goldgar v. Office of Administration,* 26 F.3d 32, 34-35 (5th Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995);

---

[18](...continued)
the year 1975. Plaintiff's Reply to Defendant's Response to above supplement [Dkt. # 98]. Such a claim provides even less reason to believe that Plaintiff has the ability to disseminate the material to the general public, were he to be granted a fee waiver.

*Krohn v. Department of Justice*, 628 F.2d 195, 197-98 (D.C. Cir. 1980).

<u>Requests 430951-61</u>

Plaintiff's requests, numbers 430951-61, for material relating to eight FBI Laboratory employees and three Department of Justice employees, were denied pending receipt of either proof of death of the individual(s) or privacy waivers. Hodes Decl. ¶¶ 4. Plaintiff sought a "full and unabridged copy of all employee files, performance reports, disciplinary reports, internal or DOJ investigations of, and civil or criminal actions against" these individuals. Complaint, Exhibit B-1.

Release of information regarding third parties is generally precluded unless the requester provides a release from the individual or proof that the individual has died. *See, e.g., Hall v. United States Dep't of Justice*, 26 F. Supp. 2d 78, 81-82 (D.D.C. 1998); *Billington v. Department of Justice*, 11 F. Supp. 2d 45, 61 (D.D.C. 1998), *aff'd in part, rev'd in part on other grounds*, 233 F.3d 581 (D.C. Cir. 2000).

Plaintiff asserts that his inquiry into the "FBI laboratory scandal" is of such importance and public interest that the employees about whom he seeks information no longer have any personal privacy. Memorandum in Response to Defendants DOJ and FBI Motions for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment, at 12 [Dkt. # 44] . Plaintiff cites *Bennett v. DEA*, 55 F. Supp. 2d 36 (D.D.C. 1999). Plaintiff asserts that government employees

> such as FBI expert THURMAN have been engaged in egregious misconduct and overreaching and have been subject to National media attention and Congressional oversight. They have been justly humiliated and stigmatized and embarrassed and by wrongfully prosecuting even one innocent American or by testifying falsely in United States Courts of Law, these employees have given up their personal privacy interest [in] this information.

*Id.* at 12.

A government employee "has at least a minimal privacy interest in his or her employment history and job performance evaluations." *Stern v. Federal Bureau of Investigation*, 737 F.2d 84

(D.C. Cir. 1984), *citing Department of the Air Force v. Rose*, 425 U.S. 352 (1976). When a government employee has been censured, the public interest is in knowing the identity of the censured employee, "in order to hold the governors accountable to the governed." *Stern, supra*, 737 F.2d at 92; *accord, Dunkelberger v. Department of Justice*, 906 F.2d 779 (D.C. Cir. 1990). The Court in *Stern* held that the public interest in learning the identity of a Special Agent in Charge who had been found to have participated in a cover-up outweighed the agent's privacy interest. Nevertheless, *Stern* only directed disclosure of the agent's identity, not of his entire personnel file. Plaintiff has the names of the individuals who were connected with his prosecution and seeks personal information from their employee files. He names Thurman as a person whose involvement in questionable laboratory procedures has already been revealed, but does not explain how the information in Thurman's personnel file would shed further light on the actions of the FBI. Nor does he provide any specific reason why the personnel files of the other individuals he names would advance the purpose of the FOIA. The Defendant correctly declined to produce the information sought in these requests.

Request 440927

Plaintiff's final request, number 440927, was for specific material from the Manual of Investigative Operations and Guidelines. The 15 pages determined to be responsive were released. Hodes Decl. ¶¶ 4. Plaintiff has not contested the Defendant's response to this release.

For the foregoing reasons, summary judgment will be granted for the FBI.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF OFFICES OF THE ATTORNEY GENERAL, DEPUTY ATTORNEY GENERAL,
ASSOCIATE ATTORNEY GENERAL, OFFICE OF PROFESSIONAL RESPONSIBILITY,
AND THE CIVIL RIGHTS DIVISION

### A. Offices of Attorney General, Deputy Attorney General, and Associate Attorney General

The motion on behalf of these units of the Defendant is supported by a declaration of Melanie Ann Pustay, Deputy Director of the Office of Information and Privacy ("OIP"), who is the final decision making person for the unit responsible for searching and reviewing records of these offices. Pustay Decl. ¶ 1, 2.

### The Offices of the Deputy Attorney General and Associate Attorney General

Because Plaintiff was classified as a non-media, non-commercial requester, he was entitled to two free hours of search time and 100 free pages of records per component. Pustay Decl. ¶ 6. Accordingly, OIP released to Plaintiff without excisions 100 responsive pages from the Office of the Deputy Attorney General and 113 pages from the Office of the Associate Attorney General. Pustay Decl. ¶ 7. As to other non-exempt records, Plaintiff was informed that his request for a fee waiver had been denied because the Defendant concluded that the disclosure would not be "likely to contribute significantly to public understanding of the operations or activities of the government . . . ." 5 U.S.C. § 552(a)(4)(A)(iii); Pustay Decl. ¶ 5 and Ex. B. Plaintiff's "conclusory statement" that disclosure to him would be "in the public interest" and his assertion that he was "illegally confined" were not sufficient bases for a fee waiver, nor was his assertion of indigency. Important to the decision was that Plaintiff had not shown that he intended to disseminate the information to the general public or that he had the ability to do so. Therefore, Plaintiff was advised, he must agree to pay fees before these units would conduct further searches. Pustay Decl. ¶ 5. Plaintiff's response to the motion on behalf of these offices incorporates his objection to the denials of a fee

waiver by other entities. For the reasons set forth above, pp.19-22, the Court will sustain the denial

of a fee waiver by the Offices of the Deputy Attorney General and Associate Attorney General.

> The Office of the Attorney General

Records from the Office of the Attorney General are maintained in the Executive Secretariat

of the Department. Thirty-one responsive pages were located in that office during a four hour search.

Ten pages (three documents) were released to Plaintiff in full. Fifteen pages (three documents) were

released with certain excisions pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). Pustay

Decl. ¶ 8 and Ex. C. Six pages that originally were withheld in full were later released with similar

excisions pursuant to Exemption 6. Pustay Decl. ¶ 9 and Ex. D.The portions of the documents that

were withheld were the names, addresses, and other information that would identify the third parties.

Exemption 6 permits the government to withhold information about individuals that is

contained in "personnel and medical files and similar files" when disclosure "would constitute a

clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption is to be

interpreted broadly. *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595 (1982).

Information is subject to disclosure, however, if a reader would not be able to identify the person to

whom it relates. *See, e.g., Washington Post Co. v. United States Dep't of Health and Human Servs.*,

690 F.2d 252 (D.C. Cir. 1982); *Citizens for Environmental Quality, Inc. v. United States Dep't of

Agriculture*, 602 F. Supp. 534, 538-39 (D.D.C. 1984). In determining whether to uphold the

assertion of Exemption 6, the court must determine whether the individual has a privacy right in the

information and, if so, whether the privacy interest outweighs any public interest found to exist. *See,

e.g., Washington Post Co. v. United States Dep't of Health and Human Servs., supra;   Ripskis v.

Department of Housing and Urban Development*, 746 F.2d 1, 3, (D.C. Cir. 1984); *National Ass'n*

*of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990).

Some of the withheld portions were internal Department memoranda relating to the appointment of persons to positions within the FBI, and related internal routing slips and notes. The withheld information was personal information about individuals who were <u>not</u> selected for the positions. As to the persons who <u>were</u> selected, the only withheld information was their social security numbers. The Department also blacked out names, phone numbers, and fax numbers of other FBI individuals involved in the selection process. Pustay Decl. ¶¶ 10. The Department concluded that it would be an undue invasion of the privacy of the individuals who were not selected to have it become public knowledge that they had been turned down for promotions. Pustay Decl. ¶ 11. Moreover, Defendant concluded, there was "minimal, if not non-existent" public interest in the identities of the persons who were not selected. Such information would not assist the public in weighing the competency of those who were selected for the position. On balance, the Defendant concluded, release of the information about the successful candidates "vindicated any public interest" while maintaining "the privacy expectations" of the losing applicants. Pustay Decl. ¶ 11. The names and telephone and fax numbers of the employees who assisted in the process were withheld because release of this information might subject the employees to pressure from applicants and "even retaliation." Because of this privacy interest and the lack of any visible public interest in disclosure, this information was withheld. Pustay Decl. ¶ 11.

There is no substantial privacy interest in the names of individuals selected for federal employment, *see Core v. United States Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984). Disclosure to the public of the names of individuals whose applications have been rejected, however, would not inform the public about the way employment decisions are reached. *Id. Accord, Judicial Watch v.*

*Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000); *Holland v. Central Intelligence Agency*, 1992 WL 233820 (D.D.C. August 31, 1992); *Commodity News Serv., Inc. v. Farm Credit Admin.*, 1989 WL 910244 (D.D.C. 1989).

Also withheld in part were portions of six pages of email messages to the Office of the Deputy Attorney General from the Office of Professional Responsibility and the Office of the Attorney General. The messages were summary results of name checks, sometimes stating that no information about the individual had been located, at other times giving a "brief description of the employees' involvement with a particular investigation . . . ." Pustay Decl. ¶ 12. The Defendant withheld the identities of these individuals and the brief description of their involvement, which might be as a reporter of another employee's wrongdoing, as a witness, or as the subject of an investigation. Pustay Decl. ¶ 12.

In balancing the public interest in disclosure against the privacy rights of the individuals, the Defendant concluded that agency employees involved in these investigations would expect their names to remain confidential. Witnesses and those who report alleged wrongdoing would be subject to embarrassment and possibly harassment if their identities became public. Future witnesses would be deterred from reporting wrongdoing, thus impeding the Department in its efforts to eliminate such misconduct. The subjects of the investigations would be subject to public ridicule, particularly if the allegations were found to be unsubstantiated. Pustay Decl. ¶ 13. Although there may be a public interest in the Department's internal disciplinary procedures, the "minimal amount of information" in these records would not, Pustay concluded, be useful for the public in seeking to evaluate the Department's performance and was outweighed by the privacy interests of the individual employees. There was, she says, "no substantive connection between the investigations mentioned in these emails." Pustay Decl. ¶ 13.

Accordingly, Pustay asserts, the Office of Information and Privacy "released all reasonably segregable, nonexempt information . . . responsive to plaintiff's request." Pustay Decl. ¶ 14.

Plaintiff has not objected to the application of the specified exemptions by the Office of the Attorney General. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment on Behalf of the Office of the United States Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of Professional Responsibility, and the Civil Rights Division [Dkt. # 89]. The Court concludes that the Office of the Attorney General made an appropriate search for requested records and accepts as unchallenged its assertion that it has released all responsive, non-exempt, segregable information.

B. The Office of Professional Responsibility

The motion for the Office of Professional Responsibility ("OPR") is supported by a declaration of Dale K. Hall, Freedom of Information Specialist. Hall Decl. ¶ 1. This office conducted a search and located no records responsive to Plaintiff's request for documents regarding himself or his criminal cases, Items 6 and 7 of his request. Hall Decl. ¶¶ 5, 6. The remaining request was for records pertaining to other individuals. The Office advised Plaintiff that it could neither confirm nor deny the existence of investigatory records regarding third parties because he had not submitted consents from these individuals and there had been no official acknowledgment of any investigation of the named individuals. The confirmation of an investigation, without an overriding public interest, would be an unwarranted invasion of personal privacy. Hall Decl. ¶¶ 5, 7-8. Because OPR is charged with investigating allegations of misconduct by Defendant's employees, 28 C.F.R. § 0.39, its records are considered law enforcement files. Hall Decl. ¶ 9. On balance, the privacy interests of any individuals mentioned in the OPR files outweighed the public interest in disclosure. Therefore FOIA exemption 7(C), 5 U.S.C. § 552(b)(7)(C), was invoked as authority for

30

neither confirming nor denying the existence of responsive investigatory records. Hall Decl. ¶¶ 7, 8., 9.

Plaintiff opposes the OPR's motion on the same grounds that he opposes the motions of the FBI and EOUSA, that the issues involved are so serious as to far outweigh the privacy interests of the individuals involved. Plaintiff's Response to Defendant's Motion for Summary Judgment on behalf of these entities, p. 3 [Dkt. # 89]. For the reasons previously stated, the Court concludes that Plaintiff has not demonstrated an overpowering public interest sufficient to override the privacy interests of the individuals concerned.

C. The Civil Rights Division

Nelson D. Hermilla, Chief of the Freedom of Information/Privacy Acts Branch of the Civil Rights Division, provided a declaration describing the search made in the Criminal Section of the division for documents responsive to Plaintiff's request. Despite several searches, no responsive documents were found. Hermilla Decl. ¶¶ 3 - 9.

Plaintiff accepts the representations of the Civil Rights Division that it has no documents responsive to his requests.

CONCLUSION

For the foregoing reasons, summary judgment will be entered for Defendants. An appropriate order accompanies this Memorandum Opinion.

THOMAS PENFIELD JACKSON
United States District Judge

DATE: 3/22/02