UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>11 Dupont Circle, N.W.<br>Washington, D.C. 20036<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Independence Avenue, S.W.<br>Washington, D.C. 20201<br><br>      Defendant. | Civil Action No. 1:05CV01127(CKK) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION <u>FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") has moved for partial summary judgment, demonstrating that the determination of Defendant U.S. Department of Health and Human Services ("HHS") to deny CREW's request for a waiver of fees associated with the processing of CREW's Freedom of Information Act ("FOIA") request is wrong as a matter of fact and law. HHS's response is nothing short of remarkable.[1]

Like the proverbial ostrich with its head buried in the sand, HHS asks the Court to ignore the controversy that has swirled around HHS and the Bush administration because of its

---

[1] HHS not only responded to CREW's Motion for Partial Summary Judgment, but also filed its own Motion for Partial Summary Judgment. HHS neglected, however, to file a statement of material facts as to which HHS contends there is no genuine issue, as required by LCvR 7(h).

burgeoning use of covert propaganda to influence public opinion. HHS argues that the Court should instead accept HHS's unsubstantiated and patently false claims that CREW's FOIA request is merely a vague, speculative fishing expedition, unsupported by any extrinsic evidence, for documents that HHS claims would add nothing to the public's understanding about the operations of government. The temerity with which HHS makes these assertions is matched only by the blatant contradictions in its arguments.

As CREW has already shown, the documents it seeks – contracts and contacts between HHS and any external public affairs firms– have a direct link to the public's better understanding of the operations and activities of HHS, as they relate to how HHS is using its contracting authority and spending its appropriated funds to create news videos and other forms of covert propaganda to shape public opinion about HHS's programmatic, and possibly political, agenda. Having satisfied the criteria for a fee waiver, CREW's motion for partial summary judgment should be granted.

**1. The Requested Records Concern the Operations and Activities of HHS**

In arguing that CREW has failed to establish that the records it seeks concern the operations or activities of the government, HHS ignores the nature of the documents CREW is seeking and the context of CREW's request. As CREW explained in its appeal, "[t]here has been wide public attention given to government agencies' use of video news releases and other media products created by public affairs firms to promote certain policies of this Administration." CREW's Appeal Letter of July 6, 2005 (Exhibit H to Amended Complaint). It is virtually self-evident that disclosure of documents reflecting HHS's use of such media products – the subject of CREW's FOIA request – will disclose how HHS has used its

contracting authority and contracting funds to influence and shape public opinion about HHS's policies and programs. *See* id. Indeed, plaintiff's own proffered evidence proves this fact, as it documents the expanded and "pervasive" efforts of this administration to "generate positive news coverage" through the use of prepackaged news reports created by outside public relations firms, including the very specific actions of HHS in a number of instances. David Barstow and Robin Stein, The Message Machine: How the Government Makes News; Under Bush, a New Age of Prepackaged News, *The New York Times*, March 13, 2005 (Exhibit 3 to Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Cross-Motion for Partial Summary Judgment) (hereinafter "HHS's Mem.").[2]

HHS's response to this showing is curious in the extreme, as it ignores entirely the background and context of CREW'S request, and instead faults CREW with failing to identify "any issue or subject on which 'public opinion' is to be shaped." HHS's Mem. at 4. But that is precisely what CREW is attempting to find out, *i.e.*, what contracts with public relations firms did HHS enter into to advance which particular HHS policies and agendas. Moreover, the larger story here is that HHS used its contracting authority to produce covert propaganda in the face of opinions by the Government Accountability Office ("GAO") that such expenditures were illegal.[3] Thus, the link between CREW's request and the operations and activities of HHS could

---

[2] As discussed *infra*, this article is not properly before the Court as it was not part of the administrative record to which the Court's review is confined. 5 U.S.C. §552(a)(4)(A)(vii).

[3] *See* U.S. Government Accountability Office, Department of Health and Human Services, Centers for Medicare and Medicaid Services - Video News Releases, GAO/B-302710 (May 19, 2004); U.S. Government Accountability Office, Office of National Drug Control Policy - Video News Release, GAO/B-303495 (Jan. 4, 205); U.S. Government Accountability

not be clearer. That HHS chooses to ignore this link is no basis for the Court to do likewise.

Nor should HHS succeed in its efforts to contort the nature of CREW's FOIA request and the administrative showing CREW made in support of its fee waiver request. CREW's FOIA request is not limited to "the activities of individuals and organizations *outside the government*." HHS's Mem. at 5 (emphasis in original). The "informative value"[4] of the records CREW seeks is that HHS has entered into contractual relationships with outside public relations firms using funds appropriated to HHS and with the purpose of advancing HHS's agenda.

HHS also accuses CREW of engaging in a "fishing expedition" unrelated to government operations or activities, citing Van Fripp v. Parks, No. 97-159, slip op. at 10 (D.D.C. March 13, 2000).[5] Van Fripp actually supports, not undermines, CREW's position here, as the Court characterized a FOIA request for evidence related to possible misappropriation of funds as a "fishing expedition" in the absence of independent evidence of such misappropriation. Id. Here, by contrast, there is ample independent evidence, including several GAO opinions, a report on the Bush administration's public relations spending by the minority staff of the House Committee on Government Reform, and numerous news articles documenting specific instances in which HHS and other agencies have used covert propaganda to advance their mission. *See* Amended Complaint, ¶¶ 15-24. This independent corroborating evidence demonstrates that far from a fishing expedition, CREW's FOIA request is focused on specific, identifiable agency conduct.

---

Office, Reconsideration of B-303495, Office of National Drug Control Policy, GAO/B-303495.2 (Feb. 15, 2005).

[4] HHS's Mem. at 5.

[5] *See* HHS's Mem. at 4.

### 2. The Records CREW Seeks Would Be Meaningfully Informative About HHS's Operations or Activities.

HHS raises mutually inconsistent arguments in arguing that CREW has failed to satisfy the second criteria for a fee waiver,. On the one hand, HHS contends that the activities about which CREW seeks documents are "standard" and "routine" and therefore, their disclosure would not produce or add any "meaningful information." HHS's Mem. at 6.[6] On the other hand, HHS argues that there has already been "wide[]" dissemination of HHS's "efforts to shape public opinion,"[7] thereby implicitly acknowledging the "newsworthiness" of CREW's request. Quite obviously the attention that this issue has drawn to date evidences the meaningfulness of its content.

Morever, HHS's argument relies on an article in *The New York Times* that is not a part of the administrative record. *See* Exhibit 3 to HHS's Mem. HHS produced this article only after CREW pointed out in its opening brief that HHS had failed to "support its summary conclusions that disclosure of the requested documents would not reveal meaningful information and is unlikely to 'unearth fresh or new ideas.'"[8] HHS's proffer at this date is too little too late.

Further, that HHS considers using taxpayer dollars to fund covert propaganda to be "part of its standard, routine operations,"[9] merely underlines the audacity of this Administration in

---

[6] Of course, in making this argument HHS essentially concedes that CREW's request does seek documents related to the activities of HHS. What HHS appears to contest is the meaningfulness of those activities.

[7] Id.

[8] Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment, p. 9.

[9] HHS's Mem., p. 6.

passing off as "independent journalism" government-originated news segments, when the GAO has opined on three separation occasions that the use of federal funds for such purposes is illegal.[10] The pervasiveness of this practice and the fact that it continues in the wake of the GAO opinions and numerous news reports are ample evidence of how the public would gain meaningful information if CREW were afforded access to up-to-date contracts and contacts HHS had with public relations firms.

Notwithstanding this evidence, HHS contends that CREW's request is "too ephemeral" because there is an "absence of independent evidence of other instances in which HHS commissioned public relations firms to produce covert propaganda."[11] But this is precisely what CREW is trying to find out, *i.e.*, are there other instances of HHS using covert propaganda and other facts relating to its already-known use of covert propaganda beyond what has already been reported?[12] The Bush administration's disagreement with GAO's opinions on the legality of using taxpayer funds for this purpose and the fact that they continue to "procure[] more releases, and on a broader array of topics,"[13] amply support CREW's efforts to find out what those releases involve.

---

[10] *See* n.1, *supra*.

[11] Id. at 7 n.1.

[12] Indeed, as CREW pointed out in its opening brief, HHS came forth with new information about a contract it had with a conservative journalist only after the Department of Education revealed a similar practice and only after the GAO investigated the Bush administration's illegal practice of funding covert propaganda. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment, p. 10. That HHS has been less than forthcoming in the past raises a legitimate question about what HHS has yet to reveal.

[13] Barstow and Stein, *The New York Times*, March 13, 2005.

### 3. Disclosure of the Requested Documents Will Contribute to the Public Understanding At Large.

HHS argues that CREW is not entitled to a fee waiver because it has not demonstrated "an intent and ability to disseminate material to a reasonably broad audience of interested persons."[14] As purported proof, HHS points to CREW's web site which HHS contends is limited to documents "sourced to other articles or data already in the public domain," and from which HHS concludes that CREW is "unqualified to successfully" disseminate new information.[15]

HHS's argument is a gross misrepresentation of CREW's web site and the evidence CREW submitted administratively to support its fee waiver request. CREW, in fact, uses FOIA requests to obtain documents that CREW, in turn, disseminates publicly through its web site as well as to various news media which, in turn, place that information in the public domain. Moreover, HHS's assertion that all of the material on CREW's web site comes from publicly available sources is simply wrong (and totally lacking in proof). For example, a review of a web site prepared by CREW and concerning the many activities of Jack Abramoff and the individuals linked to Abramoff, which is accessible through CREW's main web site, www.citizensforethics.org, reveals documents and information CREW obtained from FOIA requests. *See* CREW's Appeal Letter of July 6, 2005, p. 2. As CREW explained to HHS during the administrative process, "CREW's dissemination of information is at the heart of what it does."[16]

HHS's argument also ignores the other means by which CREW disseminates information

---

[14] HHS's Mem., p. 8.

[15] Id. at 9.

[16] CREW's Appeal Letter of July 6, 2005, p. 2.

– through reports. For example, CREW recently published a report, based on information CREW had obtained from a variety of sources, that details the campaign contributions received by members of Congress from corporations involved in pornography.[17] CREW's ability to disseminate new information is not seriously in doubt, and HHS erred when it ignored and misconstrued the evidence before it.

### 4. CREW's Intended Disclosure Would Contribute Significantly to Public Understanding.

Finally, HHS argues that CREW has not explained how CREW's disclosure of the requested documents would add anything to the public understanding that is not already known.[18] According to HHS, CREW's proffered explanation of "covert propaganda" is "too late."[19]

First, it is unclear what HHS means by its reference to "covert propaganda" with respect to the public understanding component of the fee waiver requirements. The key for CREW however, as it explained at the administrative level, is that CREW is able to provide detailed analysis of issues, which is its "hallmark."[20] Unlike news reporters who face publication deadlines and competition for limited news space, CREW has the ability to analyze large amounts of information at leisure and to publish and disseminate a more in-depth treatment. In this way, CREW can and will contribute to the public's understanding of the specific issue of

---

[17] *See Addicted to Porn: How Members of Congress Benefit from Pornography*, cited in CREW's Appeal Letter of July 6, 2005, at p. 2.

[18] HHS's Mem., p. 9.

[19] Id.

[20] CREW's Appeal Letter of July 6, 2005, p. 2.

HHS's contracting practices with public relations firms, as well as the broader issue of how HHS's use of covert propaganda is part of an administrative effort to shape public opinion.

## CONCLUSION

HHS is embroiled in a controversy of considerable proportions concerning its efforts, and the Bush administration's efforts generally, to shape public opinion through the use of covert propaganda that is the product of contractual relationships HHS has with public relations firms, and that has been paid for by taxpayer dollars. CREW is an organization dedicated to ensuring the integrity of government officials and the governmental decision-making process. CREW's FOIA request at issue here is just one of many efforts by CREW to advance its mission. As such, CREW has met the qualifications for a fee waiver and HHS's contrary conclusion must be overturned.[21]

Respectfully submitted,

\_\_\_\_/s/_____
Melanie Sloan
(D.C. Bar No. 434584)
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and
  Ethics in Washington

---

[21] In an effort to conserve the resources of the parties and the Court, CREW has attempted to ascertain from HHS what other FOIA requests HHS has received for the same documents CREW has requested. Under the Electronic Freedom of Information Act Amendments of 1996, HHS is required to post in its reading room all documents it has disclosed and "which, because of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records." 5 U.S.C. §552(a)(2)(D). Compliance with this provision would moot the issue of CREW's entitlement to fees. Counsel for HHS has advised CREW that while HHS has received a number of other FOIA requests that overlap with CREW's, HHS has made no disclosures whatsoever. HHS counsel was unable to say whether this is because HHS has claimed exemptions or simply has not processed any of the numerous requests for these documents.

        11 Dupont Circle, N.W.
        Washington, D.C.  20036
        Phone: (202) 588-5565
        Fax: (202) 588-5020

        Attorneys for Plaintiff

Dated: September 8, 2005