UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON

    Plaintiff,

      v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES

    Defendant.

Civil Action No. 05–1127 (CKK)

**MEMORANDUM OPINION**
(September 8, 2006)

Plaintiff Citizens for Responsibility and Ethics in Washington ("Plaintiff" or "CREW")

brings this action against Defendant United States Department of Heath and Human Services

("Defendant" or "HHS") seeking declaratory relief regarding Defendant's failure to comply with

Plaintiff's request for documents pursuant to the Freedom of Information Act ("FOIA").

Presently before the Court are Plaintiff and Defendant's cross-motions for partial summary

judgment with respect to HHS's decision that CREW did not qualify for a public interest fee

waiver for the documents it requested.  For the reasons set forth below, the Court shall grant [11]

Plaintiff's Motion for Partial Summary Judgment and deny [14] Defendant's Cross-Motion for

Partial Summary Judgment with respect to this issue.

## I.  BACKGROUND

On January 11, 2005, Plaintiff sent its initial document request to Defendant.  Am.

Compl., Ex. F (1/11/05 letter from CREW to HHS re: FOIA (hereinafter "Request")).  Pursuant

to FOIA, Plaintiff requested:

any contact, dating from January 1, 2001, that any office of the Department of Health and Human Services may have had with any external public affairs firms including, but not limited to Ketchum Public Affairs and Fleischman-Hilliard Public Affairs.  Specifically, we request the release of any contracts the Department of Health and Human Services may have entered into with any public affairs firm.  We further request records of contacts any Department of Health and Human Services employee may have had with any employee of any public affairs firm with which the Department of Health and Human Services had a contractual relationship.

*Id.* at 1.  Plaintiff also asked for "a waiver of fees associated with processing this request for records."  *Id.* at 2.  In support of its entitlement to such a waiver, CREW stated:

[t]he subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant governmental procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. . . . Specifically, these records are likely to contribute to the public's understanding of the Department of Health and Human Service's [sic] efforts to shape public opinion.

CREW is a non-profit corporation . . . committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. . . . CREW uses a combination of research, litigation, and advocacy to advance its mission.  The release of information garnered through this request is not in CREW's financial interest.  CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums or reports.

*Id.* at 2-3.

In a letter dated June 30, 2005, Defendant denied Plaintiff's request for a fee waiver and indicated that it would not proceed with Plaintiff's request for documents until the parties had reached an agreement as to the fees.  Am. Compl., Ex. G (6/30/05 letter from HHS to CREW re: FOIA request (hereinafter "Request Denial")).  In denying the fee waiver, Defendant concluded that Plaintiff had

not clearly articulated a basis for how the records [CREW] requested will shed

2

> light on the operations and activities of the Government.  The great majority of the
> requested records are of a routine administrative nature, and are unlikely to
> unearth fresh or new issues that have not already been explored in various media
> accounts in 2004 or early 2005.

*Id.* at 1.  Defendant also stated that CREW had not established a capacity to disseminate any

information it gleaned from the requested documents and that CREW's website did not evidence

a history of making such information available to the public.  *Id.*

Plaintiff appealed the denial of the fee waiver within the thirty-day deadline.  Am.

Compl., Ex. H (7/6/05 letter from CREW to HHS re: FOIA Appeal (hereinafter "Administrative

Appeal")).  Plaintiff stated,

> the subject of this request concerns the operations of the federal government and
> the disclosure will likely contribute to a better understanding of HHS's efforts to
> shape public opinion.  There has been wide public attention given to government
> agencies' use of video news releases and other media products created by public
> affairs firms to promote certain policies of this Administration.  HHS's release of
> records regarding any contact or contracts it has or had with any public affairs
> firm will contribute significantly to the public's understanding of the individuals
> and organizations that influence, or attempt to influence, public opinion regarding
> HHS and its policies and programs.

*Id.* at 1.  Plaintiff noted that CREW's methodology differs from that of the media, such that the

fact that there have been some media accounts of HHS's contact with public affairs firms "is no

substitute for the detailed treatment that is CREW's hallmark in its treatment of issues."  *Id.* at 2.

Plaintiff stated that it "will share its analysis with the public, either through memoranda

or reports.  As a review of CREW's website . . . illustrates, CREW has an established history of

using the Freedom of Information Act for these purposes. . . . CREW's dissemination of

information is at the heart of what it does."  *Id.*  Plaintiff went on to list two specific examples of

its previous work: a report it published regarding campaign contributions that benefitted

members of Congress, and a website compiling information regarding the Jack Abramoff criminal investigation.  *Id.*  Plaintiff also noted that, "to date, every [other] federal agency with which CREW has filed a FOIA request has granted CREW's request for a fee waiver," with the exception of the Transportation Security Administration.  *Id.*

Defendant denied Plaintiff's appeal on July 14, 2005.  Am. Compl., Ex. I (7/14/05 letter from HHS to CREW re: FOIA appeal (hereinafter "Administrative Appeal Denial")).  According to Defendant, Plaintiff failed to demonstrate how the requested documents would "shed light on the operations and activities of the Government," nor had Plaintiff shown how the documents "would reveal meaningful information, the general nature and policy implications of which are not already public knowledge."  *Id.* at 2.  Additionally, according to HHS, "the great majority of the requested records are of a routine administrative nature . . . ."  *Id.*

Defendant reiterated its position that Plaintiff had not established an ability to disseminate to the public any information it derived from the documents, given that Plaintiff allegedly failed to demonstrate "a firmly established track record for successfully publishing information to the public, especially new information that would be of interest beyond a narrow segment of the general population."  *Id.*  Defendant felt Plaintiff's request was lacking in "a particular focus" and that Plaintiff failed to adequately disclose "a particularized plan for the analysis and publication of any new information that may in fact be located and released."  *Id.*  While Defendant did not dispute CREW's status as a non-profit organization, nor that CREW's purpose in seeking the documents was non-commercial, Defendant concluded that such factors, in and of themselves, do not warrant a fee waiver.  *Id.*  Finally, Defendant concluded that the letter was "the final decision of [HHS] in this matter," and that Plaintiff could seek judicial review in

4

federal district court.  *Id.* at 2-3.

Plaintiff filed the instant action on June 7, 2005, prior to receiving any response from Defendant regarding CREW's request for documents or request for a fee waiver, seeking relief based on Defendant's failure to respond and failure to produce the requested documents.  *See generally* Compl.  Following Defendant's denial of Plaintiff's request for fee waiver, and subsequent denial of Plaintiff's Administrative Appeal, Plaintiff filed its Amended Complaint, adding Defendant's denial of the fee waiver to the matters for which Plaintiff seeks declaratory relief.  *See generally* Am. Compl.  Plaintiff and Defendant have filed cross-motions for partial summary judgment on the issue of whether HHS's denial of the fee waiver was proper.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations and quotations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. 2505 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S. Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III.  DISCUSSION

"Intended to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed, . . .

6

the Freedom of Information Act requires federal agencies to disclose information upon request . . . ." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1309 (D.C. Cir. 2003) (internal citations and quotation marks omitted).  FOIA provides that documents requested from a government agency "shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  Plaintiff and Defendant do not dispute that it is not primarily in CREW's commercial interest to receive the requested documents and publicize the information therein.  Administrative Appeal at 2; Administrative Appeal Denial at 2.  Therefore, the issue before the Court is whether the disclosure of the requested information is in the public interest. According to HHS guidelines, four factors are relevant in this determination:

> (1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?
>
> (2) Would disclosure of the records reveal any meaningful information about government operations or activities?  Can one learn from these records anything about such operations that is not already public knowledge?
>
> (3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons?  Under this factor, we may consider whether the requester is in a position to contribute to public understanding.  For example, we may consider whether the requester has such knowledge or expertise as may be necessary to understand the information, and whether the requester's intended use of the information would be likely to disseminate the information among the public. . . .
>
> (4) Will the contribution to public understanding be a significant one?  Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

45 C.F.R. § 5.45(b)(1)-(4).

Plaintiff, as the requesting party, bears the burden of showing that CREW as an organization and its requests for records meet these criteria. *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988). "Furthermore, requests for public interest fee waivers must be reasonably detailed and specific; they are evaluated on a case-by-case basis. Conclusory statements that the disclosure of the requested documents will serve the public interest are not sufficient to meet this burden." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 60 (D.D.C. 2002) ("*Judicial Watch III*") (internal citation omitted). The Court's review is *de novo* and is limited to the record that was before HHS when it considered Plaintiff's appeal.[1] *Id.* FOIA, as amended in 1986, "is to be liberally construed in favor of waivers for noncommerical requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (citing 132 Cong. Rec. S14298 (1986)).

A.    *Plaintiff's Request Pertains to the Operations and Activities of the Federal Government*

Pursuant to 45 C.F.R. § 5.45(b)(1), Plaintiff must show "[h]ow, if at all, [] the records to be disclosed pertain to the operations or activities of the Federal Government." 45 C.F.R. § 5.45(b)(1). In its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendant's Cross-Motion for Partial Summary Judgment ("Defendant's Opposition and Cross-Motion"), Defendant notes that Plaintiff's request concerns "'the Department of Health and Human Services [sic] efforts to shape public opinion.'"

---

[1] Accordingly, the Court will not consider any of the news articles both parties have attached and referred to in their motions and related filings, because none of these articles were before HHS when considering Plaintiff's Administrative Appeal. Any argument presented by Plaintiff or Defendant that relies on such outside information has not been considered by the Court in its analysis.

Def.'s Opp'n and Cross-Mot. at 3.  According to Defendant, Plaintiff's request is thus too vague and conclusory to fulfill the first prong of the public interest fee waiver analysis, in that "Plaintiff's allusion to defendant's 'efforts to shape public opinion' neither identifies any issue or subject on which 'public opinion' is to be shaped, nor does it specify what 'efforts' defendant allegedly makes toward such an amorphous end." *Id.* at 4.  Plaintiff's Administrative Appeal to HHS stated that receipt of the requested documents would "contribute significantly to the public's understanding of the individuals and organizations that influence, or attempt to influence, public opinion regarding HHS and its policies and programs."  Def.'s Opp'n and Cross-Mot. at 4, quoting Administrative Appeal (emphasis omitted).  From this, Defendant concludes Plaintiff has failed to specify documents that pertain to actions of the government, because CREW's request sought information regarding "individuals and organizations" and not HHS or the government.  Def.'s Opp'n and Cross-Mot. at 5 (emphasis omitted).

Defendant conveniently fails to quote the language of Plaintiff's Request that is most relevant to this factor: "we request the release of any contracts [HHS] may have entered into with any public affairs firm.  We further request records of contacts any [HHS] employee may have had with any employee of any public affairs firm with which [HHS] had a contractual relationship."  Request at 1.  The language from the Request that Defendant found to be impermissibly vague pertains to another factor of the fee waiver analysis–whether the public's understanding will be enhanced by the release of the requested documents–and the Court will address the sufficiency of Plaintiff's Request as to that factor in Section III(C) of this Memorandum Opinion.

With respect to this first factor, however, the Court concludes that Plaintiff has fulfilled

its burden of stating with reasonable specificity that its request pertains to operations of the

government.  Defendant's statement that "plaintiff has not explained the connection between the

information sought . . . and an identifiable government operation or activity," Def.'s Opp'n and

Cross-Mot. at 3–4, is simply inaccurate.  Plaintiff requested records reflecting contracts HHS, a

government agency, formed with public affairs firms.  By HHS's own admission, such contracts

are part of HHS's "routine administrative" activities.  Denial at 1.  Defendant's attempt to

characterize CREW's request as vague and not related to activities of the government is contrary

to logic and to the administrative record.

In denying CREW's Administrative Appeal, HHS also stated that CREW had "not

identified a particular focus of a search beyond 'all contracts' and 'all contacts' concerning

contractual relationships with public affairs firms . . . ."  Administrative Appeal Denial at 2.

Faced with similar objections in *Rossotti*, the conclusion reached by the instant circuit is fitting

here: "[w]e cannot imagine what else [plaintiff] could have said to satisfy the government's

appetite for specificity."  *Rossotti*, 326 F.3d at 1313.

In *Rossotti*, the instant circuit concluded that the requesting party had fulfilled this prong

when the request called for "documents regarding . . . a conflict-of-interest waiver executed by

the Deputy Treasury Secretary for the Commissioner of the IRS, the Commissioner's relationship

with a private company doing business with the IRS, and decisions by the IRS involving the

private company."  *Rossotti*, 326 F.3d at 1313.  Similarly, a request for documents reflecting

"communications between former FAA Deputy Administrator Linda Daschle and technology

companies that manufacture bomb-scanning devices, and information relating to FAA and

DOT's use of bomb-scanning devices in airports" was held to be sufficiently specific and related

10

to government operations and activities. *Judicial Watch v. U.S. Dep't of Trans.*, Civ. No.

02–566, 2005 WL 1606915 at *4 (D.D.C. July 7, 2005) (citing *Rossotti*, 326 F.3d at 1313).

Rather than being "ephemeral" or "amorphous," the Court finds CREW's request to be

reasonably specific in identifying the parameters of its search in line with the precedent of this

circuit. Surely CREW's request for documents relating to any public affairs contracts dating

from January 1, 2001 is as specific as Judicial Watch's request in *Rossotti* for "documents

regarding . . . the Commissioner's relationship with a private company doing business with the

IRS, and decisions by the IRS involving the private company," which this circuit deemed

sufficiently specific. *Rossotti*, 326 F.3d at 1313. The Court concludes that Plaintiff has fulfilled

this first prong in its request for documents pertaining to HHS's contractual relationships with

public affairs firms.

   B.    *Disclosure of the Requested Records Will Likely Reveal Meaningful Information*
         *About HHS Operations that is not Already Public Knowledge*

Pursuant to 45 C.F.R. § 5.45(b)(2), Plaintiff must demonstrate "[if] disclosure of the

records [would] reveal any meaningful information about government operations or activities

[and if] one [can] learn from these records anything about such operations that is not already

public knowledge." 45 C.F.R. § 5.45(b)(2). Defendant avers that Plaintiff has not met its burden

with respect to this second factor for three reasons: (1) Plaintiff's reasoning for its request,

according to Defendant, is based on "rank speculation of government malfeasance," Defendant's

Reply at 5; (2) the information Plaintiff requests is already in the public domain, Defendant's

Opposition and Cross-Motion at 8; and (3) Plaintiff's request pertains to "activities [that] are part

of [HHS's] standard, routine operations," Defendant's Opposition and Cross-Motion at 6. In

Defendant's view, these factors show that Plaintiff has failed to show that disclosure of the requested information would reveal meaningful information about government operations. The Court will address each of Defendant's arguments in turn.

        1.    <u>"Rank Speculation"</u>

In its Administrative Appeal to HHS, Plaintiff elaborated on the motivation behind its requesting documents pertaining to contact between HHS and public affairs firms. Plaintiff noted recent "public attention given to government agencies' use of video news releases and other media products created by public affairs firms to promote certain policies of this Administration." Administrative Appeal at 1. As such, CREW sought records reflecting contacts or contracts between HHS and public affairs firms because it believed the information derived from them would contribute to "the public's understanding of the individuals and organizations that influence, or attempt to influence, public opinion regarding HHS and its policies and programs." *Id.* Defendant argues that "rank speculation of government malfeasance does not satisfy plaintiff's burden . . . ." Def.'s Reply at 5. The Court notes that Defendant's Administrative Appeal Denial did not dispute Plaintiff's statement that government agencies' use of public affairs firms, and specifically that of HHS, has received public attention, and the Court's review is based on this administrative record.

A requesting party's argument that its request fulfilled this second prong was rejected when that party only stated in perfunctory language that its request was "likely to contribute significantly to public understanding of the activities" of the government because it "fail[ed] to provide details specific to this FOIA request" and did not support its statements with facts. *Judicial Watch v. U.S. Dep't of Justice*, 185 F. Supp. 2d at 61. On the other hand, the instant

circuit found that a FOIA request fulfilled this second prong, despite the government agency's objection that the requesting party did not provide evidence substantiating its suspicions of the defendant agency's conflict of interest, when the requesting party sought to corroborate existing suspicions via the requested documents. *Rossotti*, 326 F.3d at 1314 ("[T]he question here is not whether [Defendant] had such a conflict, but whether disclosure of the requested documents is likely to contribute to public understanding of IRS operations – a goal that disclosure will promote, regardless of what the documents reveal. . . . [T]he American people have as much interest in knowing that key IRS decisions are free from the taint of conflict of interest as they have in discovering that they are not.").

Accordingly, the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government. In its Administrative Appeal, Plaintiff's reference to recent public interest in government agencies, and specifically HHS, employing affairs firms "to promote certain policies of this Administration" provides context for why the documents sought would reveal meaningful information about the activities of the government. Previous media focus on this issue suggests that CREW's request, rather than being based on rank speculation, pertains to actual conduct of HHS and other government agencies. While "[b]are allegations of malfeasance, unsupported by the evidence, cannot serve to satisfy this factor," the fact that such products of public affairs firms have recently received public attention substantiates CREW's view that the requested documents will reveal information about agency conduct. *Klein v. Toupin*, Civ. No. 05–647, 2006 WL 1442611, *4 (D.D.C. May 24, 2006) (slip copy) (citing *Am. Fed'n Gov't Employees v.*

13

*Dep's of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986)).  It is not rank speculation, as Defendant asserts, for Plaintiff to think that the public will gain meaningful information through this request about "the individuals and organizations that influence, or attempt to influence, public opinion regarding HHS and its policies and programs."  Administrative Appeal at 1.

> ### 2.     "Already Public Knowledge"

Defendant argues that CREW is not entitled to a fee waiver because the requested information has already been made public, and thus CREW cannot satisfy its burden of showing that disclosure would reveal meaningful information that is not already public knowledge.  Def.'s Reply at 6.  "[D]ocuments that are 'already . . . in the public domain, in either a duplicative or a substantially identical form' are not 'as likely to contribute' to the public's understanding." *VoteHemp*, 237 F. Supp. 2d at 60 (citing 28 C.F.R. § 16.11(k)(2)(ii)).  According to Defendant, because Plaintiff stated in its Administrative Appeal that "[t]here has been wide public attention given to government agencies' use of video news releases and other media products created by public affairs firms to promote certain policies of this Administration," the requested documents, pertaining to such activities, cannot be said to increase public knowledge because they are already public.  Def.'s Reply at 6-7 (citing Administrative Appeal at 1).

Plaintiff and Defendant both cite heavily to materials outside the scope of the administrative record in their arguments regarding this issue.  *See* Pl.'s Mem. for Partial Summ. J. at 4-5, 9-11; Def.'s Opp'n and Cross-Mot. at 6, 7; Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. and Reply in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Opp'n and Reply") at 3, 6; Def.'s Reply at 4-5, 7.  For this reason, the Court will review the relevant portions of the administrative record so as to clearly delineate the scope of this discussion.

HHS's Denial of CREW's initial Request is the first mention of the possibility that any of the requested information is already publicly available. HHS stated, "[t]he great majority of the requested records are of a routine administrative nature, and are unlikely to unearth fresh or new issues that have not already been explored in various media accounts in 2004 or early 2005." Denial at 1. Seeking to explain how disclosure of the requested documents would increase public understanding of government operations, CREW, in its Administrative Appeal, referred to "wide public attention given to government agencies'" use of public affairs firms to "promote certain policies of this Administration." Administrative Appeal at 1. Further, CREW disagreed with HHS's assertion that new ideas were unlikely to be unearthed because the mere fact that previous "media accounts have touched on HHS's use of public affairs firms in their accounts of the broader issue is no substitute for the detailed treatment that is CREW's hallmark in its treatment of issues." *Id.* at 2. In denying CREW's Administrative Appeal, HHS stated that CREW had not "demonstrated how disclosure would reveal any meaningful information about Government operations or activities that is not already public knowledge," and that CREW had "not explained how the records would reveal meaningful information, the general nature and policy implications of which are not already public knowledge." Administrative Appeal Denial at 1, 2.

This circuit addressed a similar situation when the defendant agency argued that the information was already public because the requesting party relied on news articles in making its request. *Rossotti*, 326 F.3d at 1314. The instant circuit concluded that, although the request referred to articles that had appeared in a magazine regarding a conflict of interest waiver, and although that magazine itself had a copy of that waiver, "nothing in the record before us suggests

15

that the waiver has been disclosed to anyone other than [the magazine].  Moreover [plaintiff] seeks considerably more than the waiver itself." *Id.* at 1315.  The Court went on to note that the request involved a wide range of documents related to defendant's "conflict of interest and [the agency's] decision to grant him a conflict-of-interest waiver." *Id.* at 1315.

By analogy, both Plaintiff and Defendant agree that there has been at least some publicity as to agencies' use of affairs firms to promote certain policies.  Denial at 1; Administrative Appeal at 1.  CREW even stated such attention has been focused on HHS specifically, which HHS does not dispute.  Administrative Appeal at 2.  Based on the administrative record, however, the scope, extent, and specific content of any previous media coverage of this issue is unknown.  Specifically, the administrative record does not reveal whether such attention focused on HHS in depth or superficially, nor can the Court speculate as to whether attention was given to the actual contracts between HHS and affairs firms, which are the focus of CREW's request.

Faced with the argument that requested materials are already publicly available such that public understanding will not be increased through their disclosure, courts consistently require substantiation of the agencies' assertions in the record.  This circuit, in finding that a government agency "never explained where in the 'public domain' these [requested] materials reside" held that "[s]uch an explanation is necessary because the mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions." *Campbell v. U.S. Dep't Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998) (citing *Carney*, 19 F.3d at 815-16; *Schrecker v. Dep't of Justice*, 970 F. Supp. 49, 50-51 (D.D.C. 1997); *Fitzgibbon*, 724 F. Supp. at 1051.  The court concluded that the defendant had "not indicated how closely

16

related the requested material was to material already in the public domain, an omission that

precludes deference to its ultimate conclusions." *Id.*

　　In *Judicial Watch, Inc. v. U.S. Department of Transportation*, the court noted that, despite

defendant's argument that the requested documents were already publicly available, "[n]othing in

the record suggests that the detailed information requested by [plaintiff] was already in the public

domain.  The release of the requested documents may contribute to the public's knowledge"

regarding agency activities.  2005 WL 1606915 at *5.  Similarly, the Second Circuit rejected the

Department of Justice's objections to a fee waiver request due to its assertion that the requested

material was already publicly available because the Department of Justice "merely stated that the

records [plaintiff] requested had been released to other requesters without explaining how these

records were readily available to the public."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807,

815–16 (2d Cir. 1994).  In *Fitzgibbon v. Agency for International Development*, the court

rejected defendants' argument that the requested documents were available in the agency's

reading room such that they were already publicly available and not eligible for a fee waiver.

724 F. Supp. 1048, 1050-51 (D.D.C. 1989).  The court explained, "[d]efendants have not

demonstrated the public's understanding of the information contained in the [requested

documents] plaintiff seeks."  *Id.* at 1051.  Together, these cases suggest that an agency asserting

that the requested documents are already publicly available must do more than merely make that

assertion.

　　While it was CREW's burden to show that the information derived from its request

would reveal meaningful information that was not already public knowledge, Defendant had an

opportunity to specify the content of any previous media coverage of HHS's activities in order to

17

have such information included in the administrative record. Defendant failed to do so. Rather,
Defendant stated generally and conclusorily that the requested documents "are unlikely to
unearth fresh or new ideas" and that CREW failed to show "how disclosure would reveal any
meaningful information about Government operations or activities that is not already public
knowledge." Denial at 1; Administrative Appeal Denial at 1. Defendant's statements cannot be
said to show that the documents CREW requested – contracts between HHS and affairs firms and
documents relating to such contracts – are already publicly available such that disclosure of the
requested documents would not increase public knowledge of HHS operations.

   *Oglesby v. Department of Justice* provides an example of when a court has concluded that
the requested information is publicly available to the extent that disclosure would not provide
meaningful information. Civ. No. 02-603, slip. op. at 4 (D.D.C. Sept. 3, 2002). There, the court
found that the record contained references to specific information that was already public, noting
that "many of the documents requested by plaintiff, including news articles, speeches, interviews,
and transcripts, are already in the public domain." *Id.* In addition, however, the court also found
that the requester had "not shown the necessary connection between the requested information
and increased public understanding of specific government operations and activities." *Id.* Unlike
*Oglesby*, the administrative record here contains no indication of which requested documents, if
any, are in the public domain, and CREW *has* explained how the information it seeks will
contribute to understanding of government operations and activities. The Court has already
concluded that CREW's stated purpose for examining the requested documents has fulfilled its
burden of showing that the requested documents will reveal meaningful information regarding
HHS activities.

In sum, despite vague references in the record to media attention given to government agencies' use of public affairs firms, there is no basis for the Court to conclude that the documents CREW seeks contain information that is already publicly available to the extent that no new meaningful information is to be gained from their disclosure. The Court notes that the language of the guidelines states, "[w]ould disclosure of the records reveal *any meaningful information* about government operations or activities? Can one learn from these records *anything* about such operations that is not already public knowledge?" 45 C.F.R. § 5.45(b)(2) (emphasis added). Based on the administrative record, the Court concludes that references to public attention to similar agency conduct do not render CREW's request for documents unlikely to reveal any meaningful information about the operations of HHS.

3. <u>"Administrative Nature"</u>

Defendant stated that "the great majority of the requested records are of a routine administrative nature, and are unlikely to unearth fresh or new issues that have not already been explored in various media accounts in 2004 or early 2005." Denial at 1. It reiterated this position in its denial of Plaintiff's Administrative Appeal. Administrative Appeal Denial at 2. In its Opposition and Cross-Motion, Defendant argues that, because forming contracts with affairs firms is "part of its standard, routine operations," and because HHS "has legal authority to produce news segments to support a broad range of objectives within its purview . . . [i]t is difficult to fathom what meaningful information plaintiff . . . hopes to add . . . ." Def.'s Opp'n and Cross-Mot. at 6.

Defendant's insistence that the administrative nature of the requested documents somehow makes those documents of less public interest is without merit. It would be difficult to

reconcile the purpose of the FOIA, which is to ensure citizens the right to oversee the activities

of their government, *Rossotti*, 326 F.3d at 1309, with a policy that would not deem information

pertaining to administrative matters sufficiently of public interest to warrant a fee waiver.  When

faced with a similar argument by the defendant agency who refused to waive the fee for public

source material, repetitive information, and administrative material, the court in *Samuel Gruber*

*Education Project v. U.S. Department of Justice* noted that "[n]one of these categories of

information appear in the regulations of exceptions to the fee waiver *if the requester has*

*otherwise met his burden* of demonstrating that disclosure is in the public interest and not

primarily for commercial interest."  24 F. Supp. 2d 1, n.15 (D.D.C. 1998) (emphasis added).  It is

immaterial whether the contracts CREW seeks are routine or within HHS's legal authority, as

long as CREW can demonstrate that the disclosure of such information would reveal meaningful

information about operations of the government.  Because CREW has demonstrated a legitimate

public interest in understanding the activities of HHS, a government agency, contracting with

public affairs firms seeking to promote certain policies, HHS's view that there is nothing to be

gained from information about "standard, routine operations" is irrelevant.

Accordingly, each of Defendant's arguments that Plaintiff failed to fulfill this second

prong fails.  Far from being "rank speculation," CREW's interest in contracts between HHS and

affairs firms has been substantiated by previous media attention.  While some attention has been

given to the topic generally, nothing in the record suggests that the specific content of the

requested documents is redundant such that those documents would not reveal new information.

Finally, where Plaintiff has shown that disclosure of the requested documents would reveal

meaningful information about operations of the government that is not public knowledge, the fact

that HHS considers the requested documents "administrative" and "routine" fails to rebut Plaintiff's showing. CREW has demonstrated that the requested documents, records pertaining to contracts between HHS and affairs firms, will provide information about "HHS's efforts to shape public opinion" through the use of such firms. This Court is guided by the statutory language for this factor, which requires that disclosure reveal "any information" about operations of the government, as well as the legislative history of the 1986 FOIA amendment, seeking liberal interpretation "in favor of fee waivers." *See McClellan*, 835 F.2d at 1284. Accordingly, the Court finds that Plaintiff has fulfilled its burden of showing that disclosure will provide meaningful information about HHS operations.

C.    *Disclosure of the Requested Documents Will Advance the General Public's Understanding Because CREW has Demonstrated its Capacity and Intention to Disseminate the Information to the Public*

In considering the third factor, whether "the disclosure [will] advance the understanding of the general public as distinguished from a narrow segment of interested persons," 45 C.F.R. § 5.45(b)(3), "a court must consider the requester's 'ability and intention to effectively convey' or disseminate the requested information to the public." *Judicial Watch III*, 185 F. Supp. 2d at 62-63 (quoting 28 C.F.R. § 16.11(k)(2)(iii); citing *Judicial Watch v. U.S. Dep't of Justice*, 122 F. Supp. 2d 5, 18 (D.D.C. 2000) ("*Judicial Watch I*")).

In its initial denial of CREW's request for a fee waiver, HHS stated that it had not "found any evidence of a regular practice of or mechanism for dissemination of information to the public" on CREW's website or in its Request. Denial at 1. In its Administrative Appeal, CREW stated:

CREW uses a combination of research, litigation, and advocacy to advance is [sic]

21

> mission. . . . CREW will analyze the information responsive to this request, and
> will share its analysis with the public, either through memoranda or reports. As a
> review of CREW's website . . . illustrates, CREW has an established history of
> using the Freedom of Information Act for these purposes.

Administrative Appeal at 2. CREW listed two examples of its past work to demonstrate its

ability to disseminate information to the public: its report on congressional campaign

contributions and its website detailing the activities of Jack Abramoff. *Id.* In its denial of

CREW's appeal and in its arguments before this Court, HHS has maintained its position that

CREW has not fulfilled this third prong. Defendant argues, "[i]nstead of responding in its appeal

to the Department with a clear reference as to where within its website it could find evidence of

dissemination, plaintiff simply asserted that a review of its website, a report it published, and a

website it created regarding substantial. [sic]" Def.'s Reply at 8.

However, Defendant fails to acknowledge that CREW did respond to HHS's Denial by

specifically stating where on its website evidence of dissemination could be found. In its

Administrative Appeal, CREW wrote that its website "contains a link to a site, prepared by

CREW, that details the many activities of Jack Abramoff . . . ." Administrative Appeal at 2.

Accordingly, Defendant's assertion that "'[n]either on your website nor in your request letter

have we found any evidence of a regular practice of or mechanism for dissemination of

information to the public,'" Defendant's Reply at 8, is without merit.

In *VoteHemp*, the court concluded that the plaintiff had fulfilled its burden when it stated

that it would "use such information to educate and inform the public, and their elected

representatives, of the reasons behind DEA's actions. [Plaintiff] disseminates its views,

including such information, to the public through its website, through press releases and similar

22

materials and through communications with Members of Congress and state legislators." 237 F.

Supp. 2d at 62. The court found such statements were "sufficient to demonstrate that the

information would be disseminated to the public at large." *Id.* The court in *VoteHemp* relied on

*Judicial Watch III*, which similarly concluded that the plaintiff had sufficiently shown

"mechanisms for disseminating information, including allowing reporters to inspect its

documents, 'blast faxing' press releases, maintaining a website and appearing on radio and

television programs." 185 F. Supp. 2d at 62. "[A]lthough the plaintiff has not gone into great

detail about how it plans to disseminate the particular information obtained through this FOIA

request, [plaintiff] has described several methods it uses to make information available to the

public, it has a record of conveying to the public information through FOIA requests, and it has

stated its intent to do so in this case." *Id.* This language contradicts Defendant's view that

Plaintiff was required to "disclose[] a particularized plan for the analysis and publication" of the

information it obtained. Administrative Appeal Denial at 2. Finally, the court in *D.C. Technical*

*Assistance Organization, Inc. v. U.S. Department of Housing and Urban Development* suggested

that "[i]n this Information Age, technology has made it possible for almost anyone to fulfill this

requirement" through mechanisms such as the internet. 85 F. Supp. 2d 46, 49 (D.D.C. 2000).

    The only case Defendant relies upon in support of its contention that Plaintiff has not

shown a capacity to disseminate information to the public is *McClellan*. There, the Ninth

Circuit, in concluding that the requesters had not fulfilled this third prong of the public interest

fee waiver analysis, noted that "the request [gave] no indication of requesters' ability to

understand and process this information." *McClellan*, 835 F.2d at 1286. Defendant asserts that

the instant case is analogous because "all the documents on plaintiff's website can be sourced to

other articles or data already in the public domain," concluding that "[P]laintiff is unqualified to successfully" disseminate new information.  Def.'s Opp'n ant Cross-Mot. at 9.  According to Defendant, because Plaintiff has not "identified any publications on its website indicating that they are based upon FOIA requests[,]" CREW failed to fulfill its burden.  Def.'s Reply at 7-8.

Defendant's argument fails for three reasons.  First, in *McClellan*, doubt as to the requesting parties' ability to "understand and process" the requested information, rather than being dispositive, was one among several factors the Ninth Circuit considered in its conclusion that the requesters did not fulfill their burden, including the fact that, unlike in the present case, "the record before the agency [did] not reveal whether requesters have a history of disseminating such information . . . ."  *McClellan*, 835 F.2d at 1286.  Second, Defendant's assertion that CREW's website contains no evidence of dissemination of information derived from FOIA requests is an assertion raised only in the present filings which was not asserted in the administrative record, and thus the Court will not consider it.  Third, even if the Court could consider the contents of CREW's website, and assuming *arguendo* that Defendant is accurate in its assessment, the Court is not aware of a statutory requirement that a requesting party must have a history of disseminating information *derived from FOIA requests* to be entitled to a fee waiver.  Indeed, if this were a requirement, a requesting party otherwise entitled to a fee waiver and capable of disseminating information to the public would have to pay fees associated with its initial FOIA requests until it had shown it was capable of disseminating information obtained through a FOIA request, a scenario that has no basis in FOIA or the legislative intent regarding the liberalization of fee waivers.  *See McClellan*, 835 F.2d at 1284.

While the court in *Judicial Watch III* referred to the plaintiff's past dissemination of

24

information derived from FOIA requests as one factor leading to the conclusion that the plaintiff had fulfilled this third prong, the court never indicated that such a record was necessary to be entitled to a fee waiver. 185 F. Supp. 2d at 62. Rather, the requesting party's past dissemination of information obtained through FOIA requests was one of several factors the court considered in addition to the requester's proffered list of dissemination mechanisms and expressed intent to disseminate the information. *Id.* Such factors are considered because they illustrate the true inquiry: does the requesting party have the "'ability and intention to effectively convey' or disseminate the requested information to the public." *VoteHemp*, 237 F. Supp. 2d at 62 (quoting *Judicial Watch III*, 185 F. Supp. 2d at 62).

While there is nothing in the administrative record as to whether CREW has disseminated new information derived from a FOIA request, the record does indicate that CREW has the capacity to process and disseminate information and has done so in the past. In addition to stating the mechanisms it uses to disseminate information to the public, including reports, memoranda, and its website, which, consistent with *VoteHemp*, *Judicial Watch III*, and *D.C. Technical*, could have sufficed to fulfill this prong, Plaintiff also cited two specific examples–the Abramoff website and the campaign contribution report–show that CREW has the capacity to compile information and disseminate it to the public. The Court cannot imagine why a requesting party would have to convince an agency that it was capable of disseminating new information or information obtained through a FOIA request when it has amply showed a capacity to disseminate information generally.

Finally, in its denial of CREW's administrative appeal, HHS stated that CREW had not demonstrated "a firmly established track record for successfully publishing information to the

public . . . that would be of interest beyond a narrow segment of the general population."

Administrative Appeal Denial at 2. "The relevant inquiry . . . is whether the requester will

disseminate the disclosed records to a reasonably broad audience of persons interested in the

subject." *Carney*, 19 F.3d at 815 (finding the agency's view unreasonable when it argued the

requester had the "burden of demonstrating that any records released actually [would] be

disseminated to a large cross-section of the public."). CREW's stated intent to disseminate

information derived through this FOIA request and its demonstrated capacity to do so, evidenced

by its website and two examples of such dissemination, show that CREW can and will

disseminate the information it gains. Further, its reference to recent public interest in

government agencies' use of public affairs firms to promote certain policies, which Defendant

does not dispute, demonstrates that there will likely be continued interest in this subject. Based

on the administrative record, and in the context of FOIA's liberalization of fee waivers, the Court

concludes that CREW has adequately demonstrated its intent and capacity to disseminate

information gained through its request to a reasonably broad segment of interested persons.

> D.    *The Information Plaintiff Seeks Will Significantly Contribute to Public*
>        *Understanding of the Government's Operations*

Plaintiff stated in its Administrative Appeal, "that media accounts have touched on

HHS's use of public affairs firms in their accounts of the broader issue is no substitute for the

detailed treatment that is CREW's hallmark in its treatment of issues." Administrative Appeal at

2. Defendant asserts that Plaintiff fails to show its contribution to public knowledge will be

significant because "there is no specificity in the mere contention that plaintiff can analyze

disclosures in more depth than journalists," and that this assertion "does not entitle [Plaintiff] to a

fee waiver." Def.'s Reply at 9. To support this contention, Defendant cites *Oglesby*, in which the court did not give credence to the plaintiff's statement that he was "a writer and lecturer who has disseminated such information in the past, and [] intend[s] to do so in the future." *Oglesby*, 920 F.2d at 66, n.11.

Defendant's reliance on *Oglesby* is misplaced. The portion cited by Defendant comes from the court's discussion of prong three of the public interest fee waiver analysis, in which the court had determined that the plaintiff had not adequately specified his ability to disseminate information obtained. *Id.* Here, Plaintiff's statement comparing CREW's treatment of issues with media accounts serves to demonstrate how its request fulfills the fourth prong: "[w]ill the public's understanding of the government's operations be *substantially greater* as a result of the disclosure?" 45 C.F.R. § 5.45(b)(4) (emphasis added). Accordingly, the inquiry involves comparing the public understanding with and without the potential disclosure. *Judicial Watch III*, 185 F. Supp. 2d at 62. Contrary to Defendant's assertion that CREW's description of its treatment of issues does not entitle CREW to a fee waiver, CREW's potential contribution, as compared to existing media accounts is highly relevant. The Court does not agree, in this context, that Plaintiff has failed to specify how it seeks to contribute to the public understanding.

Defendant also argues that, because "the public is already aware of the issue underlying the FOIA request," Plaintiff has failed to show specifically how disclosure will significantly increase public understanding. Def.'s Reply at 9. Defendant relies on *VoteHemp*, in which the court concluded that the requesting party had failed to fulfill this burden. There, the plaintiff's goal was to increase public understanding as to a decision of the Drug Enforcement Agency ("DEA") classification of a certain controlled substance. *VoteHemp*, 237 F. Supp. 2d at 60. The

27

DEA had previously released a "detailed analysis of pertinent legal authorities" explaining the reasoning for its decision. *Id.* The court concluded the plaintiff had failed to state what it contributed to public understanding with reasonable specificity because the request merely stated, "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government[.] . . ." *Id.* at 57.

The present case differs in two important ways. First, based on the administrative record, there has been no comparable report specifically addressing what CREW seeks to discover from the requested documents. In *VoteHemp*, the Drug Enforcement Agency issued a publicly available document explaining in detail the reasoning for its classification of the drug, which was the precise question the plaintiff sought to have answered. Here, as discussed previously in this Memorandum Opinion, some amount of public attention has been given to the issue of HHS and other agencies contracting with affairs firms, but the administrative record certainly does not indicate that the full scope of CREW's request would be redundant of previous media accounts. Second, the request in *VoteHemp* used boiler-plate language in an attempt to bring itself within the language of the statute, and for that reason, the court concluded it had not fulfilled the requirement that it state with "reasonable specificity" how it would significantly contribute to public understanding. *VoteHemp*, 237 F. Supp. 2d at 61. In contrast, CREW stated a specific way in which it would contribute to public knowledge as compared to the information previously available via media accounts in that CREW seeks to analyze all pertinent contracts between HHS and public affairs firms, as well as other records relating to those contractual relationships.

In *Fitzgibbon*, the court considered the informativeness of the requested documents,

which were, at the time, available in the agency's reading room, as compared to public

knowledge if plaintiff compiled and disseminated the information. *Fitzgibbon*, 724 F. Supp. at

1051. The court concluded that "plaintiff's publication would be much more likely than

defendants' reading rooms to contribute significantly to public understanding . . . ." *Id.* (internal

quotation marks omitted). The court in *Fitzgibbon* relied on a case in which the Supreme Court

stated, "[p]lainly there is a vast difference between the public records that might be found after a

diligent search of courthouse files . . . and a computerized summary located in a single

clearinghouse of information." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the

Press*, 489 U.S. 749, 764, 109 S. Ct. 1468, 1477, 103 L. Ed. 2d 774 (1989) (discussing whether a

"compilation of otherwise hard-to-obtain [but publicly available] information" violates FOIA's

privacy provision).

     While the distinction in the present case between previous general media accounts versus

a detailed examination of the issues by CREW is not as vast as the above example, the Court

cannot agree with Defendant that CREW failed to state with specificity how disclosure would

significantly contribute to public understanding. Plaintiff demonstrated that there has been past

public interest in this topic but that media accounts only "touched on HHS's use of public affairs

firms in their accounts of the broader issue." Administrative Appeal at 1-2. Plaintiff went on to

explain that its contribution would be giving this issue "detailed treatment that is CREW's

hallmark . . . ." *Id.* at 2. Further, the Court has already determined that Defendant's assertion

that there is no new information to be gained through disclose of the requested documents is not

supported by the administrative record, which contains no indication that the records of HHS's

contracts with public affairs organizations are already publicly available. Taken together, and in

the context of the liberalization of FOIA fee waivers, the Court concludes that Plaintiff has fulfilled its burden of showing that disclosure of the requested documents will significantly contribute to public understanding of government operations.

## IV.  CONCLUSION

For the above stated reasons, the Court concludes that Plaintiff has shown it is entitled to its requested FOIA public interest fee waiver.  Accordingly, Plaintiff's Motion for Partial Summary Judgment is granted, and Defendant's Cross-Motion for Partial Summary Judgment is denied.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 8, 2006


                                              /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge

30