UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CV-05-1127 (CKK)

## JOINT STATUS REPORT

Pursuant to this Court's Order, dated September 8, 2006, Citizens for Responsibility and Ethics in Washington ("CREW"), plaintiff, and the United States Department of Health and Human Services ("HHS"), defendant, hereby submit this joint status report. CREW submitted a FOIA request, dated January 11, 2006, that requested "records that relate to any contact, dating from January 1, 2001, that any office of the Department of Health and Human Services may have had with any external public affairs firms including, but not limited to Ketchum Public Affairs and Fleischman-Hilliard Public Affairs." CREW "[s]pecifically" requested "the release of any contracts the Department of Health and Human Services may have entered with any public affairs firm." CREW "further request[ed] records of any contacts any Department of Health and Human Services employee may have had with any employee of any public affairs firm with which the Department of Health and Human Services had a contractual relationship."

On June 7, 2005, CREW sued HHS for failure to process its request. HHS denied CREW's fee waiver request on June 30, 2005. Thereafter, July 20, 2005, CREW amended its

complaint to include the fee waiver issue. The parties proceeded to brief the issue of fee waiver and each moved for partial summary judgment. On September 8, 2006, this Court granted plaintiff partial summary judgment and ordered defendant to grant CREW a fee waiver by October 6, 2006. This Court also ordered the parties to submit a joint status report of how they are to proceed in this case by October 13, 2006.

The parties cannot agree to a proposed production schedule. Therefore, each party below explains its position:

### **Plaintiff's Proposal**

The FOIA request that CREW sent to HHS is identical to FOIA requests that CREW has sent to many other agencies, the vast majority of which have been responded to in full. The position HHS appears to be taking here -- that the request is extremely burdensome and requires the use of terms that are difficult to search -- is therefore perplexing and, in any event, is belied by the face of the request itself. Moreover, this request stems from a public controversy over agency use of federal dollars to contract with outside public affairs firms for purposes of producing propaganda, and HHS has been at the center of that controversy.

Pursuant to the Court's Opinion, CREW contacted counsel for HHS to ascertain the status of the agency's processing of CREW's request. CREW requested very specific information, including the number of responsive documents the agency has identified, what other similar or related FOIA requests the agency has received and processed, an explanation for how much time the agency needs to complete processing and why. In response, counsel for HHS proposed that HHS be given six to eight months to complete processing, with an initial batch of responsive documents to be delivered in six weeks, and the next production 10 weeks later. Counsel did not identify how many documents would be processed during these initial proposed production periods, nor did he identify how many responsive documents the agency had overall.

2

The only specificity provided by HHS's counsel was that some unidentified components of HHS had contributed to the roughly 30,000 pages of documents that the agency had identified so far as possibly responsive. In response to a direct question from CREW HHS refused to identify precisely what the agency means by potentially responsive documents, and how this category differs from documents that are actually responsive to CREW's request. As justification for the amount of time HHS is seeking, Counsel also pointed to the need to contact outside parties for their review and input on questions of privilege. Despite several follow-up requests for more information, HHS has been unable or unwilling to provide any further details.

In short, HHS is proposing that CREW wait to receive all of the documents to which it is statutorily entitled until some time in June 2007, approximately two and one-half years after CREW made its request under the FOIA. To justify this extraordinary request, HHS has offered only vague generalities completely lacking in any specificity that would explain why, on top of the time already afforded HHS, it needs six to eight months more.[1] It is simply inconceivable that HHS cannot process the documents at a faster pace to meet its statutory obligations under the FOIA. Having cleared the initial hurdle HHS placed in CREW's way under the FOIA, CREW is now entitled to the documents it requested, documents that in all likelihood have been the subject of other FOIA requests.[2]

CREW is willing to work with HHS to narrow the universe of responsive documents as well as the issues for which HHS might need to seek outside input. But to do so CREW needs

---

[1] It was CREW's understanding, based on conversations with HHS's predecessor counsel in negotiating a briefing schedule on the fee waiver issue, that the agency would not use the pendency of the fee waiver issue as a reason to postpone processing. Evidently this was not an understanding shared by HHS.

[2] Despite CREW's questions, HHS has been unwilling to tell CREW what other FOIA requests the agency has received and processed for similar records.

3

information that is solely in the possession of the agency. For example, unless and until CREW knows what the categories of proprietary information are, CREW cannot exclude any such categories from its request and thereby eliminate the need for outside consultation. Stated differently, CREW needs information, something the agency has to date been unwilling to provide.

Accordingly, CREW requests that absent further information and an adequate explanation from the defendant, the Court order HHS to complete its production of all documents responsive to CREW's January 11, 2005 FOIA request by December 31, 2006. CREW also suggests that the Court order the defendant to report on the status of the agency's processing by November 30, 2006.

### Defendant's Proposal

This request is extremely broad and burdernsome. It involves a department-wide search and terms that are difficult to use in a search. HHS has already identified over 30,000 documents as potentially responsive and the search is ongoing. The agency cannot give a concrete estimate of how many other documents within HHS are responsive but expect that it will be several thousand, if not more. This request also requires a department-wide coordination by the central FOIA office to ensure that the response is consistently applied throughout the agency. Furthermore, many of these documents are contracts and will require pre-disclosure notification to outside parties submitting contract bids. This can be a very time-consuming process because the submitters of the information may have objections that the agency needs to evaluate. Another element of this request that is very time-consuming is the broad term "public affairs firms." Most of the components within HHS do not track contracts by the nature of the contractor's business.

To help limit the scope of the search and facilitate production of the documents, HHS

4

proposed that CREW identify a list of public affair firms for which they would like HHS to search. CREW stated that they were not willing to limit the scope of their request in such a manner. HHS also proposed that CREW may not be interested in any material protected by Exemption 4 of FOIA, which requires pre-disclosure notification. CREW responded that they would need to know the category of documents that would require such notification and, therefore, would not agree to that proposal.

The agency proposed to CREW two alternative schedules. The first proposal was that HHS would make its first production by November 17, 2006, and its second production by January 26, 2006, and thereafter to have another status report to assess the progress HHS is making in processing the request. HHS requests that there be 10 weeks between the first and second productions because of the disruption of the holiday season and other end of the year time-restraints on HHS. These include the simultaneous demands of other statutorily required work of collecting, consolidating and processing the HHS Annual FOIA Report. The small staff of the office, four analysts who last year had to respond to 843 FOIA requests for the Office of the Secretary alone, must also implement Executive Order 13326, the FOIA Improvement Plan. In addition, these analysts must also work on the heavy backlog of FOIA requests and respond to other ongoing lawsuit.

HHS has also proposed an alternative schedule, where after the first two productions HHS will continue producing the documents every 6 weeks until it is done. It anticipates that the entire process will take 8 months but it is difficult to estimate at this time because the processing of the request is at its early stages. CREW stated that they did not have enough information to respond to those proposals. CREW never offered any alternative schedule.

The current status of the response to CREW's FOIA request is:

1.	After HHS received the FOIA request, it acknowledged receipt of the request to

5

CREW.

2.     The central FOIA sent the request to all 10 components within HHS and the Office of the Secretary because the request demanded documents from throughout HHS.

3.     Because this request covers the entire agency, the central FOIA office is responsible for sending out any responsive documents to CREW. The central FOIA office also must ensure that the request is being interpreted consistently by the different components and that the privileges asserted are consistent. Therefore, the central FOIA office must review all documents before they are sent to CREW.

4..     Before the fee waiver was denied on June 30, 2006, the components started gathering documents and reviewing them. Some of those documents were sent to the central FOIA office before the fee waiver was denied.

5.     Because of the demand of other FOIA requests and the backlog within the HHS FOIA office, no documents were processed before the June 30, 2006, fee waiver denial.

6.     When HHS denied CREW's fee waiver, it stated that since CREW had not agreed to pay any processing costs, its request had been temporarily suspended, as the search and duplication charges may be substantial. See Dkt. # 6, Exhibit G. This is consistent with the agency's regulations at 45 C.F.R. § 5.44(b).

7.     Even though the request had been temporarily suspended, certain components still conducted more searches and gathered documents that it deemed as being potentially responsive. The central FOIA office did not process these documents because of the suspension of the request and the demands of other FOIA requests.

8.     After this Court's September 8, 2006 order, HHS reviewed its different litigations options. On September 29, 2006, the central FOIA office sent a memorandum to all of its components, requesting that they conduct a thorough search and send to the central FOIA office

any documents they deem responsive.

9. To date, the components have identified over 30,000 pages as potentially responsive. The search is not yet complete and the agency expects that at least several thousand pages more pages will be deemed responsive. The different components need to do an initial review of these documents to deem if they are actually responsive and whether any of these documents are privileged. The central FOIA office has received approximately 3,000 pages thus far. The central office must review these documents for responsiveness and privilege and determine if any of these documents require pre-disclosure notification.

Respectfully submitted,
*/s/ Anne L Weismann*
ANNE L. WEISMANN
(D.C. Bar No. 298190)
MELANIE SLOAN
(D.C. Bar No. 434584)
Citizens for Responsibility and
Ethics in Washington
1400 Eye Street, N.W., Suite 450,
Washington, D.C.  20005
(202) 408-5565

Counsel for Plaintiff

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
(D.C. Bar 418925)
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
/s/ *Adam D Kirschner*
ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7222
Washington, DC 20001
Telephone: (202) 514-5302
Fax: (202) 616-8470
adam.kirschner@usdoj.gov

Counsel for Defendant

7