UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND )<br>ETHICS IN WASHINGTON,           )<br>                                )<br>    Plaintiff,                  )<br>                                )   Civil Action No. 05-1127<br>                                )<br>UNITED STATES DEPARTMENT OF     )<br>HEALTH AND HUMAN SERVICES,      )<br>                                )<br>    Defendant.                  )<br>_____) | |

### DECLARATION OF SUSAN R. CORNELL

I, Susan R. Cornell, declare as follows:

1. I am the Freedom of Information (FOI) Officer, National Institutes of Health (NIH), Department of Health and Human Services (HHS). In this capacity, my duties include responding to requests for NIH records under the Freedom of Information Act (FOIA). My duties also include determining whether to release or withhold records or portions of NIH records in accordance with the FOIA and HHS regulations implementing the FOIA. I have been the FOI Officer since May 13, 1999. I was the Acting FOI Officer from January 5, 1998 until May 13, 1999, and I have worked in the NIH Freedom of Information Office since December 15, 1997.

2. I make this declaration based upon my personal knowledge and information available to me in my official capacity.

3. This declaration explains how I estimated that NIH has approximately 500,000 pages of potentially responsive records for Citizens for Responsibility and Ethics in Washington's FOIA request at issue in this litigation. The request sought the following:

> This request relates to any contract, dating from January 1, 2001, that any office of the Department of Health and Human Services may have had with any external public affairs

firms including, but not limited to Ketchum Public Affairs and Fleischman-Hilliard Public Affairs. Specifically, we request the release of any contracts the Department of Health and Human Services may have entered into with any public affairs firm. We further request records of contacts any Department of Health and Human Services employee may have had with any employee of any public affairs firm with which the Department of Health and Human Services had a contractual relationship.

4. NIH does not track its contractors by the nature of the contractor's business. To come up with an estimate for the number of possibly responsive pages, I sent an email to each of the FOIA coordinators for the 27 NIH Institutes and Centers (ICs) and asked them to check with their Communications Director and with any other office that might have contracts with public affairs firms. I asked them to give me the name of the contractor, an estimate of the number of pages in each contract, and an estimate of the number of pages of each record of contract with each contractor. I also met with the Associate Director for Communications and the Deputy Director for Communications for NIH and asked them to identify any Office of the Director (OD) office that might have such contracts and to provide a contact for me. I sent the same email that I sent to the FOIA coordinators to these OD contacts. I asked everyone to use NIH's previous response to a Government Accountability Office's survey about, among other things, public relations firms, as a starting point, as well as two Internet sites (http://www.hillnews.com/thehill/export/TheHill/Business/051105_message.html and http://www.prfirms.org/who/members.asp), which list public affair/relations firms, to determine if the contractor was a public affairs/relations firm. The Associate Director for Communications and the Deputy Director for Communications also gave me a list of firms that they knew certain NIH components had used as contractors. If the contractor was not on either Internet list, I asked the component to check the company's website to see how the contractor defined itself. Finally,

I gave them the www.manta.com website, which can be searched using a company's name, and it will bring up a company profile, including the business nature of the company. I compiled the results I received from the IC and OD offices, which consisted of rough estimates from the individuals who worked with these contracts.

    5. Approximately 70 contracts/task orders/purchase orders were identified, and they consisted of approximately 1,300 pages of paper. With respect to pages of contact records, I found that certain NIH offices have multiple contracts with significant numbers of pages of contacts between NIH and the contractor. Several offices have contracts that included tens of thousands or in some cases over 100,000 pages of contact records for these contracts. For example, the National Cancer Institute had approximately 13 contracts with approximately 108,000 pages of contact records for those contracts. The National Heart, Lung, and Blood Institute had approximately four contracts with approximately 154,000 pages of contact records. The National Institute of Allergy and Infectious Diseases had approximately 12 contracts with approximately 37,000 pages of contact records. The National Institute of Diabetes and Digestive and Kidney Diseases had approximately 3 contracts with approximately 179,000 pages of contact records. The National Institute of Mental Health had approximately 2 contracts with approximately 12,000 pages of contact records.

    6. NIH provides a great deal of health education to the public for which a public affairs firm may be contracted, and it is possible that the contracts/task orders/purchase orders that we have identified might not be of interest to CREW. Therefore, we believe it would be most efficient if NIH produces the awards or statements of work first and let CREW choose the ones for which they want records of contacts.

I declare under penalty of perjury that the foregoing to true and correct. Executed on this 6 day of December, 2006.

Susan R. Cornell, Esquire